EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer) <br><br> Recurrido <br><br> v. <br><br> CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros <br><br> Peticionarios | Certiorari <br><br> 2026 TSPR 13 <br><br> 217 DPR ___ |

Número del Caso: CC-2025-0050

Fecha: 3 de febrero de 2026

Tribunal de Apelaciones

    Panel Especial

Representantes legales de las partes peticionarias:

    Lcda. Olga García Vincenty
    Lcda. Patricia Cordero Alcaraz

Representantes legales de la parte recurrida:

    Lcda. Jessica Hernández Sierra
    Lcdo. Jorge Quintana Brito
    Lcda. Brenda Berríos Morales

Materia: Sucesiones; Ley de Fideicomisos – Nulidad de los fideicomisos testamentarios por incumplimiento con el requisito de inscripción en el Registro de Fideicomisos en virtud de la Ley Núm. 219-2012.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionarios<br><br>MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionaria | CC-2025-0050 | Certiorari |

Opinión del Tribunal emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico a 3 de febrero de 2026.

En el presente recurso nos corresponde resolver si el Tribunal de Apelaciones erró al no expedir la petición de

*certiorari* que presentaran Giancarlo Allio Santiago y Mia María Allio Santiago, tras concluir que no existían las circunstancias para requerir su intervención en esta etapa de los procedimientos.

En el referido recurso se solicitó al foro intermedio que revocara un dictamen del Tribunal de Primera Instancia, en el cual reiteró su determinación de denegar el planteamiento sobre la nulidad de los fideicomisos constituidos en testamento abierto.

Por los fundamentos que se exponen a continuación, resolvemos que el Tribunal de Apelaciones erró al denegar expedir el *certiorari*, puesto que negar su expedición constituye un fracaso a la justicia y, además, la controversia surge en una etapa idónea. Lo anterior, debido a que, conforme a la Ley Núm. 219-2012, Ley de Fideicomisos, según enmendada, 32 LPRA sec. 3351 *et seq.*, los fideicomisos son nulos por no haber sido inscritos en el Registro de Fideicomisos. Por tanto, el dictamen interlocutorio tiene un efecto significativo y sustancial en la determinación final del pleito y debió ser expedido.

**I.**

El Sr. David John Allio Littauer (testador) falleció el 12 de febrero de 2023. El 25 de mayo de 2021 otorgó la Escritura Núm. 16 sobre testamento abierto ante el notario Jorge A. Cartalaya Brao. En este declaró a su hijo, Giancarlo Allio Santiago, y a su hija, Mia María Allio Santiago (los hermanos Allio o peticionarios), únicos y universales

herederos; más instituyó a su favor dos fideicomisos los cuales fueron nombrados como "Support Trust" y "Life Trust". Además, el testador nombró a su hermano, el Sr. Michael K. Allio Littauer (recurrido), como albacea del caudal, y fiduciario de los fideicomisos, concediéndole la facultad exclusiva de adminístrar los bienes que componen ambos patrimonios.

El 3 marzo de 2023, el Sr. Michael K. Allio aceptó el cargo y obtuvo la correspondiente carta testamentaria, según surge de la *Resolución* dictada por el Tribunal de Primera Instancia el 21 de marzo de 2023, en el caso alfanumérico, SJ2023CV02101.[1]

Así las cosas, el 11 de agosto de 2023 presentó una solicitud sobre división de comunidad de bienes hereditarios en contra de la Sra. Carmen Santiago Chardón (señora Santiago Chardón) por sí y en representación de sus hijos: Giancarlo y Mia María, ambos de apellidos Allio Santiago.[2] Alegó que su hermano, el Sr. David John Allio Littauer, dispuso mediante testamento que todos los bienes del caudal relicto fueran constituidos en dos fideicomisos, ambos a favor de su hijo y su hija. **A esos efectos, señaló que el "Life Trust"**

---

[1] Véase apéndice del recurso, págs. 123-124. Destacamos que la Ley Núm. 219-2024 enmendó el Artículo 597 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA sec. 2571; y el Artículo 2 de la Ley 282-1999, según enmendada, conocida como "Ley de Asuntos No Contenciosos Ante Notario". Mediante esta enmienda se eliminó la figura de las "cartas testamentarias" y se atemperó el Código de Enjuiciamiento Civil de Puerto Rico a la figura del "ejecutor de la herencia" incorporada a nuestro ordenamiento jurídico mediante el Título VI de la Ley 55-2020, según enmendada, Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.* Véase exposición de motivo de la Ley Núm. 219-2024.
[2] El caso fue alfanuméricamente designado como SJ2023CV07752 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

**fue constituido el 5 de abril de 2023, en el estado de Rhode Island, y el "Support Trust" fue constituido como el "Allio Support Trust" el 30 de junio de 2023, mediante la Escritura Núm. 17 otorgada ante la notaria Lilianna María Muñiz.**

En la contestación a la demanda y reconvención, la señora Santiago Chardón, por sí y como madre custodia con patria potestad de los entonces menores, aquí peticionarios, alegó que los fideicomisos testamentarios eran nulos por no haberse registrado como requiere la ley.[3] Además, en apretada síntesis, solicitó que el albacea fuera destituido de su cargo. El Sr. Michael K. Allio replicó a la reconvención negando los hechos esenciales.

Luego de varios trámites procesales, y en lo aquí pertinente, el 13 de septiembre de 2023, **la señora Santiago Chardón por sí y en representación de los entonces menores, presentó *Moción Solicitando se declaren nulos los Fideicomisos Testamentarios*.**[4] En esencia, adujo que, a tenor con el Artículo 5 de la Ley Núm. 219-2012, *supra*, 32 LPRA sec. 3351d, el testamento donde se establecieron los fideicomisos tenía que ser registrado en el Registro de Fideicomisos adscrito la Oficina de Inspección de Notarías del Poder Judicial (ODIN).

El Sr. Michael K. Allio se opuso a lo solicitado y arguyó que el "Support Trust", constituido en Puerto Rico el

---

[3] Entre otros asuntos, solicitó que se nombrara un defensor judicial a los menores; que el apartamento en el Condominio Regatta fuese declarado el hogar seguro de estos; y que se ordenara el pago de la Sentencia emitida en el caso SJ2021RF00135, a favor de Carmen Santiago por la cantidad de $50,000.

[4] Véase SUMAC Entrada Núm. 32.

30 de junio de 2023, mediante la Escritura Núm. 17, fue debidamente inscrito en el Registro Especial de Fideicomisos.[5] En cuanto al "Life Trust" indicó que el mismo fue constituido en el Estado de Rhode Island, por lo cual no tenía que ser inscrito.[6]

El 2 de noviembre de 2023, el Tribunal de Primera Instancia emitió una orden indicando que iba a aplazar su determinación, en cuanto a la solicitud de desestimación y nulidad de Fideicomisos testamentarios, hasta tanto se nombrara un defensor judicial para los menores.[7] El 21 de noviembre de 2023 se nombró defensor judicial al Lcdo. Ramón E. Dapena Guerrero.[8] **Finalmente, el 8 de enero de 2024, notificada al día siguiente, el foro primario mediante resolución declaró "no ha lugar" a la solicitud de nulidad de los fideicomisos sin expresar fundamento.**[9]

Posteriormente, el 10 de mayo de 2024, el Defensor Judicial de los entonces menores, presentó una moción en la cual informó al Tribunal que **los menores fueron emancipados mediante sus respectivas escrituras públicas, ambas otorgadas el 2 de abril de 2024.**[10] Ante ello, solicitó el

---

[5] Acompañó con la referida moción copia del Número de Inscripción, FDC-30062023-2475, expedido por la Oficina de Inspección de Notaria (ODIN). Véase SUMAC Entrada Núm. 52.

[6] Además, indicó que la señora Santiago no tiene legitimación activa para solicitar la nulidad de los fideicomisos, por cuanto esta no es beneficiaria. Véase SUMAC 52.

[7] Véase SUMAC Entrada Núm. 84.

[8] Véase apéndice del recurso, págs. 186-189. (SUMAC Entrada Núm. 96).

[9] Véase apéndice del recurso, págs. 213-214. (SUMAC Entrada Núm. 120). Destacamos que inconforme con el dictamen, la señora Santiago solicitó reconsideración y el albacea presentó su oposición. El 11 de agosto de 2024, notificada el 14 siguiente, el foro primario declaró "no ha lugar" al petitorio. Véase SUMAC Entrada Núm. 138.

[10] Véase apéndice del recurso, págs. 270-283. (SUMAC Entrada Núm. 182).

relevo de su representación legal. También, peticionó que, conforme al Artículo 10 de la Ley de Fideicomisos, 32 LPRA sec. 3352 (c), procedía poner a los peticionarios en posesión de la mitad del caudal relicto y reiteró que el fideicomiso de Rhode Island sea "reincorporado" en Puerto Rico. El albacea se opuso a lo peticionado por el Defensor Judicial. En esencia, argumentó que ambos fideicomisos fueron instituidos a favor de los hermanos Allio y que, conforme a sus cláusulas, no puede realizar actos para su beneficio personal.[11]

El 12 de julio de 2024, **los peticionarios, en su carácter personal y representados por la Lcda. Olga García Vincenty, presentaron un escrito en el cual solicitaron la nulidad de los fideicomisos. Adujeron que los fideicomisos constituidos por testamento no fueron registrados por el notario que otorgó la escritura sobre testamento abierto en el Registro Especial de Fideicomisos y, a tenor con la ley, son nulos.**[12] Además, y en la alternativa, argumentaron que, de considerarse que los fideicomisos no fueron constituidos en el testamento, igualmente serían nulos, ya que el testador era el único que podía haberlos constituido en vida. A su entender, el testamento solo facultó al albacea a administrar esos fideicomisos, no a constituirlos.

El Tribunal de Primera Instancia emitió una Orden a ODIN, el 13 de agosto de 2024, para que acreditara si "los

---

[11] Véase apéndice del recurso, págs. 349-387. (SUMAC Entrada Núm. 218).
[12] Véase apéndice del recurso, págs. 388-414. (SUMAC Entrada Núm. 237).

fideicomisos *Support Trust* y *Life Trut* fueron registrados" y la fecha exacta de su inscripción.[13] **El 15 de agosto de 2024, el foro primario fue informado sobre la certificación expedida por ODIN, la cual indica que en el Registro de Fideicomisos no surge la inscripción del instrumento público.**[14]

Así las cosas, el 20 de agosto de 2024, se atendieron varios asuntos, y entre ellos, la solicitud de nulidad instada por los peticionarios. A esos efectos, **el foro primario consignó lo siguiente: "[r]especto a la solicitud de nulidad de los fideicomisos el Tribunal mantiene su determinación del 8 de enero de 2024 (Sumac 120)".**[15]

En desacuerdo, tanto el Albacea como los peticionarios presentaron sus respectivos recursos de *certiorari* ante el Tribunal de Apelaciones. Ambos recursos fueron consolidados y posteriormente fue denegada su expedición.[16] Tras evaluar los planteamientos, el foro apelativo intermedio razonó que:

> Luego de examinar los recursos consolidados, resolvemos que no se han producidos circunstancias que requieran nuestra intervención en esta etapa. Las determinaciones recurridas no exhiben los elementos jurídicos, que activan nuestra facultad revisora de conformidad a los parámetros de la Regla 52.1 de Procedimiento Civil, *supra*. Tampoco contemplamos la existencia de los criterios jurídicos que motiven

---

[13] Véase SUMAC Entrada Núm. 269.

[14] Véase apéndice del recurso, págs. 508-510. (SUMAC Entrada Núm. 275).

[15] Véase apéndice del recurso, pág. 517. (SUMAC Entrada Núm. 291). Además, en la referida resolución el Tribunal autorizó el alquiler del apartamento, y a que la señora Santiago Chardón residiera en el mismo hasta que fuera alquilado. El 24 de agosto de 2024, el albacea solicitó reconsideración parcial a los únicos efectos de que ordenara a la señora Santiago Chardón a desalojar la propiedad y pagar la renta atrasada. Más ello fue denegado por el foro primario mediante una resolución notificada el 29 de agosto de 2024.

[16] Oportunamente, los peticionarios solicitaron al foro intermedio que reconsiderara su dictamen, lo cual fue denegado mediante una Resolución notificada el 21 de enero de 2025.

nuestro ejercicio revisor a tenor con la Regla 40 del Tribunal de Apelaciones, *supra*. KLCE202401032 consolidado KLCE202401060, pág. 11.

Inconformes, los hermanos Allio comparecen ante esta Curia y señalan los siguientes errores:

PRIMER ERROR: Erró el TA al denegar expedir el auto y concluir que no se dan los elementos que le permiten intervenir en esta etapa del caso, según lo conceden la Regla 52.1, *[infra]*, y la Regla 40, *[infra]*.

SEGUNDO ERROR: Erró el TA al no expedir el auto y no revocar al TPI, el cual abusó de su discreción, al denegar la solicitud de los peticionarios para que se declaren nulos los fideicomisos creados por el albacea y fiduciario.

TERCER ERROR: Erró el TA al no expedir el auto y no revocar al TPI, el cual abusó de su discreción, al denegar la solicitud para que se determine que procede declarar nulo el *Support Trust* por afectar la legítima de los peticionarios, así como al negarse a determinar su derecho al 50% del caudal.

CUARTO ERROR: Erró el TA al no expedir el auto y no revocar al TPI, el cual abusó de su discreción, al denegar la solicitud de los peticionarios para que dicte resolución, dando por terminados los fideicomisos.

QUINTO ERROR: Erró el TA al no expedir el auto y no revocar al TPI, al denegar la solicitud de los peticionarios para que se cree y se inscriba en Puerto Rico el fideicomiso creado en Rhode Island.

SEXTO ERROR: Erró el TA al no expedir el auto y no revocar al TPI, al denegar la solicitud de remoción de sus funciones al albacea y fiduciario, así como al denegar que este justifique y rembolse gastos no autorizados e irrazonables, realizados con cargo al caudal hereditario, a pesar de los serios incumplimientos con la ley sobre sus obligaciones.

El 21 de febrero de 2025, notificada y archivada en autos el 26 siguiente, declaramos "no ha lugar" a la *Petición de Certiorari*. Inconformes, presentaron una oportuna *Moción de reconsideración* en la cual argumentaron que, contrario al

mandato de ley, y sin que pueda ejercerse discreción alguna, **los dos fideicomisos testamentarios, no fueron inscritos en el Registro Especial de Fideicomisos. Asimismo, indicaron que la etapa del procedimiento es la más propicia para su consideración, ya que aún el Albacea no ha cumplido con la presentación de un inventario y avalúo de forma final.**[17]

Evaluados los argumentos esbozados, el 2 de mayo de 2025 dictamos una *Resolución* en la que determinamos reconsiderar. Así las cosas, examinado el recurso, así como el escrito de la parte recurrida, procedemos a consignar el marco jurídico aplicable a la controversia ante nuestra consideración.

**II.**

### A. *Recurso de certiorari*

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La determinación de expedir o denegar un recurso de *certiorari* está enmarcada dentro de la discreción judicial. *800 Ponce de León v. AIG*, *supra*, pág. 174; *IG Builders et al. v. BBVAPR*, *supra*, págs. 337-338. Dicha discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *García v. Asociación*, 165 DPR 311,

---

[17] Véase *Moción de reconsideración,* pág. 3.

321 (2005); *Bco. Popular de PR v. Mun. de Aguadilla*, 144 DPR

651, 657-658 (1977).

En *BPPR v. SLG Gómez-López,* 213 DPR 314, 334-335 (2023)

señalamos lo siguiente:

> Como regla general, los foros apelativos no intervendrán en la discreción de los foros primarios a no ser que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. Específicamente, la discreción ha de ceder en las circunstancias en las que se configura: un craso abuso de discreción o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. (notas al calce omitidas).

Ahora bien, en los procesos civiles, la expedición de

dicho recurso se encuentra delimitada a las instancias y

excepciones contenidas en la Regla 52.1 de las Reglas de

Procedimiento Civil, 32 LPRA Ap. V. Esta regla establece que

el recurso de *certiorari* para revisar resoluciones u órdenes

interlocutorias dictadas por el Tribunal de Primera

Instancia, solo se expedirá cuando:

> […] se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en **cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.** Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto

en la Regla 50 sobre los errores no perjudiciales. [Negrillas suplidas].

Cabe resaltar que, los límites impuestos en la Regla 52.1, *supra*, a los asuntos interlocutorios, fueron aprobados por la Asamblea Legislativa bajo el entendimiento de que existen asuntos que podían esperar hasta la conclusión del caso para ser revisados en apelación, y con el propósito de acelerar los trámites ante el foro apelativo. *IG Builders et al. v. BBVAPR, supra*, pág.336. No obstante, con posterioridad a su aprobación, la Regla 52.1, *supra*, fue enmendada por la Ley Núm. 220-2009 y la Ley Núm. 177-2010. Estas enmiendas añadieron otros escenarios o circunstancias a dicha regla en referencia a la naturaleza o el efecto que produciría a las partes esperar la revisión en apelación. *800 Ponce de León v. AIG, supra*, pág. 175. En este aspecto, la Ley Núm. 177-2010 extendió la facultad revisora del Tribunal de Apelaciones a resoluciones u órdenes interlocutorias que traten asuntos de interés público o **situaciones que requieran la atención inmediata del foro revisor, pues aguardar hasta la conclusión del caso conllevaría un fracaso irremediable de la justicia**. Íd., pág. 176.

De esta manera, se incorporó al texto de la Regla 52.1, *supra*, la consideración de aquellas situaciones excepcionales que pudieran "afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones

neurálgicas o de política pública".[18] Por su naturaleza, estos deben estar sujetos a revisión inmediata y oportuna por el tribunal intermedio.

Por otro lado, el examen que hace el Tribunal de Apelaciones previo a expedir un *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 404 (2021); *IG Builders et al. v. BBVAPR*, *supra*, pág. 338. La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado,[19] 4 LPRA Ap. XXII-B, señala los criterios que debe tomar en consideración al evaluar si debe expedir este recurso.[20] En particular, la Regla 40, *supra*, dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

---

[18] Véase *Mun. Caguas v. JRO Construction*, *supra* (citando a, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533). Véase, además, 800 *Ponce de León v. AIG*, *supra*, pág. 176.

[19] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[20] Con la entrada en vigor del Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Apelaciones (SUMAC TA), el Reglamento del Tribunal de Apelaciones requirió varias enmiendas para atemperar las disposiciones que lo requiriesen a la digitalización y automatización del proceso de presentación de recursos y escritos ante el foro apelativo intermedio. No obstante, la Regla 40, *supra*, mantuvo el mismo lenguaje. Íd.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En síntesis, la precitada regla exige al foro apelativo, evaluar si alguna de las circunstancias allí enumeradas está presente en el recurso peticionado. No obstante, vale destacar que ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco son una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2004), citando a, H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

## B. *El Fideicomiso testamentario*

El fideicomiso puertorriqueño fue incorporado en nuestro acervo jurídico con unas características particulares. En este convergen principios del fideicomiso anglosajón (trust) con nuestra tradición de origen civilista. *Álvarez v. Sec. Hacienda*, 78 DPR 412, 420 (1955). Así, el fideicomiso fue concebido como una "figura híbrida" en la que resultaba difícil "precisar los contornos de su conmixtión anglosajona y civilista". *Dávila v. Agrait*, 116 DPR 549, 569 (1985). En *Dávila v. Agrait*, *supra*, analizamos la naturaleza jurídica de esta institución en sus dimensiones históricas y legales. En resumen, destacamos que:

[…] nuestra adaptación de la ley panameña de fideicomisos no creó un todo coherente e integrado a perfección. Nuestra ley tiene zonas grises, lagunas y vacíos. Hasta tanto se legisle sobre el particular, esas deficiencias no se atienden adhiriéndonos exclusivamente al respetable pensamiento de Alfaro. La

lección es clara. La creación del fideicomiso puertorriqueño tomó como punto de partida la obra del ilustre panameño, más la intención central fue incorporar a nuestro ordenamiento jurídico, con ajustes, el trust anglosajón. Esta innegable realidad sirve de guía. Es hacia las características de éste donde hay que acudir para resolver, con debido respeto a nuestra tradición civilista, muchas de las interrogantes que plantea nuestra Ley Núm. 41 de Fideicomisos de 23 de abril de 1928. Íd., pág. 565.

La primera regulación de esta institución ocurrió mediante la incorporación de los Artículos 834 al 874 del Código Civil de 1930, 32 LPRA secs. 2541-2181. Posteriormente, estos articulados fueron derogados por la actual Ley Núm. 219-2012, *supra*. De esta manera, la Asamblea Legislativa atemperó la normativa sobre fideicomisos "a las necesidades actuales de la población y de la economía [puertorriqueña]" Además, esta pieza legislativa, propone que no es necesario adaptar el trust angloamericano a las legislaciones civilistas. Surge de su exposición de motivos lo siguiente:

> […] esta Asamblea Legislativa entiende necesario no contaminar ninguno de los dos sistemas, salvo que se trate de instituciones que puedan adaptarse del sistema angloamericano al sistema civil. Es por estas razones que proponemos que el fideicomiso se consagre en una ley especial fuera del Código Civil. Exposición de Motivos de la Ley Núm. 219-2012.

Esta legislación introdujo varios cambios significativos, entre estos, una nueva definición del fideicomiso y la creación de un Registro de Fideicomisos adscrito a la Oficina de Inspección de Notaría. El Artículo 1 de la Ley Núm. 219-2012, *supra*, 32 LPRA sec. 3351, define el fideicomiso como:

> [U]n patrimonio autónomo que resulta del acto por el cual el fideicomitente le transfiere bienes o

derechos, y que será administrado por el fiduciario para beneficio del fideicomisario o para un fin específico, de acuerdo con las disposiciones del acto constitutivo y, en su defecto, conforme a las disposiciones de este capítulo.

Además, la naturaleza y extensión de los deberes y facultades de las partes serán determinadas por el acto constitutivo del fideicomiso. A falta de disposición en dicho acto, serán determinados por los estatutos dispuestos en dicha pieza legislativa. Artículo 4 de la Ley Núm. 219-2012, *supra*, 32 LPRA. sec. 3351c. El "acto constitutivo" al que se refiere el Artículo 1, *supra*, es la forma en que este debe ser constituido.

Por su parte, el Artículo 7 de la Ley Núm. 219-2012, *supra*, 32 LPRA sec. 3352, determina que la voluntad de constituir fideicomiso debe declararse expresamente **por acto entre vivos, mediante escritura pública o constituirse por testamento.**

El fideicomiso "entre vivos" o "inter vivos" es aquel que se constituye cuando el fideicomitente acude ante un notario o notaria y expresamente declara su intención de crear el fideicomiso, el cual, **tiene que realizarse en escritura pública.**

Por otro lado, el fideicomiso testamentario, conocido como "fideicomiso mortis causa", es constituido mediante testamento. Allí el testador deja previsto, para el supuesto

de su fallecimiento, el fideicomiso **con determinación cierta del fideicomisario (trustee) así como los beneficiarios.**[21]

En los fideicomisos testamentarios el causante ostenta dos funciones: la de testador y fideicomitente.[22] Por ende, a pesar de que se constituye en una fecha cierta —es decir, la fecha del otorgamiento del testamento—, el mismo no surtirá efectos hasta tanto el fideicomitente fallezca.[23]

Los tratadistas norteamericanos, George Gleason Bogert y George Taylor Bogert, nos comentan:

> It is obvious, therefore, that if a settlor it desires to create an express trust of realty or personality to take effect at his death, by means of a transfer of the all and equitable interest in property to a trustee and beneficiary, respectively, **he must draft and execute an instrument which meets the formal requirements of wills** in the appropriate jurisdiction and which describes a trust under which the trustee is to hold property given to him.(Negrillas suplidas). George Gleason Bogert & George Taylor Bogert, *Trusts and Trustees*, West Publ. Co., 2da Ed. Rev., 1984, sec.101, pág. 226.

En nuestra jurisdicción, el Artículo 8 de la Ley Núm. 219-2012, *supra*, 32 LPRA sec. 3352a, dispone el contenido que es necesario expresar en el acto constitutivo del fideicomiso. Estos son:

> (a) el lugar y fecha en que se constituye el fideicomiso;
> (b) la declaración expresa de la voluntad de constituir fideicomiso;
> (c) el nombre del fideicomiso que se constituye;
> (d) la individualización de los bienes del patrimonio, o cuota del mismo, objeto del fideicomiso. Si no resulta posible tal individualización a la fecha de su constitución, debe constar la descripción de los requisitos y características que deben reunir los bienes;

---

[21] Véase Gabriela Castrodad García, *Nuevo Código, nuevos retos: los fideicomisos testamentarios y los cambios en el derecho sucesorio*, 91 Rev. Jur. UPR 1087.
[22] Íd.
[23] Íd.

(e) la determinación de la persona que puede incorporar otros bienes al fideicomiso y del modo en que pueden ser incorporados, en su caso;

(f) la designación completa y clara del fideicomitente, del fiduciario y del fideicomisario o de los sustitutos, en su caso. Cuando se trate de fideicomisarios futuros o de clases de fideicomisario, deberán expresarse circunstancias suficientes para su identificación;

(g) las facultades y deberes del fiduciario y las prohibiciones y limitaciones que se le imponen en el ejercicio del fideicomiso;

(h) cualquier reserva de derechos que haga el fideicomitente;

(i) el plazo o condición a que se sujeta el fideicomiso, en su caso;

(j) las reglas de acumulación, distribución o disposición de los bienes, rentas y productos de los bienes del fideicomiso; y

(k) cualquiera otra cláusula que el fideicomitente quiera incluir que no sea contraria a la ley, a la moral o al orden público.

En otras palabras, la escritura pública y el testamento que se otorgue debe cumplir con los requisitos de este articulado. Incluso, este permite que el fideicomitente incluya cualquier cláusula siempre y cuando no sea contraria a la ley, a la moral o al orden público. En este sentido, es importante resaltar que nuestro ordenamiento sucesorio está cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley. *Moreda v. Rosselli*, 150 DPR 473, 480 (2000); *Torres Ginés v. ELA*, 118 DPR 431 (1987).

En virtud de lo anterior, la intención del testador de constituir un fideicomiso debe surgir expresamente del testamento.[24] Además, el testamento debe cumplir con las formalidades dispuestas en el Código Civil de 2020, con la

---

[24] En reiteradas ocasiones este Tribunal ha expresado que la voluntad del testador es la "ley de la Sucesión". *Fernández Franco v. Castro Cardoso*, 119 DPR 154 (1986); *Calimano Díaz v. Rovira Calimano*, 113 DPR 702 (1983); *Moreda v. Rosselli*, supra, pág. 480.

Ley Núm. 75 de 2 de julio de 1987, según enmendada, Ley Notarial de Puerto Rico, 4 LPRA sec.2001 *et seq.*, y el Reglamento Notarial de Puerto Rico, según enmendado, 4 LPRA Ap. XXIV.[25] Los tratadistas norteamericanos reseñan lo siguiente:

> "As we have seen, to create a trust, the settlor must manifest the intention to do so. This manifestation of intention must identify the trust's beneficiaries, its property and its purposes". Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott and Ascher on Trusts*, Aspen Publ., 5ta Ed., 2006, Vol. 1, sec. 7.1, pág. 340.

### C. *El Registro de Fideicomisos*

Como indicáramos, entre uno de los cambios significativos de la Ley Núm. 219-2012, *supra*, es la creación del Registro de Fideicomiso y el requisito de inscripción del instrumento público constitutivo.

El Artículo 5 de la Ley Núm. 219-2012, *supra*, 32 LPRA sec. 3351d, dispone:

> **Se crea el Registro de Fideicomisos adscrito a la Oficina de Inspección de Notarías de la Rama [Poder] Judicial**, dispondrá reglamentación a los efectos de los requisitos y la forma en que habrá de establecerse el Registro.
> **Todo fideicomiso constituido en Puerto Rico** se inscribirá en el Registro Especial de Fideicomisos, **bajo pena de nulidad.**

---

[25] El Código Civil dispone en el Artículo 1645, 31 LPRA sec. 11272, lo siguiente:
> Todo lo relativo a la redacción, el idioma, las formalidades, el otorgamiento y la autorización del testamento abierto se rige íntegramente por lo dispuesto en la legislación notarial para los instrumentos públicos, con las únicas salvedades contenidas en los artículos siguientes.

Además, los notarios y las notarias tienen que cumplir con los requisitos formales de fondo y de forma para que el testamento sea válido. *Moreno Martínez v. Martínez Ventura*, 168 DPR 283 (2006). El cumplimiento con los requisitos de fondo tiene que surgir expresamente de la faz de la escritura del testamento o, de lo contrario, este será nulo *ab initio*. Íd., pág. 292. Véase, además, *Instrucciones Generales a los notarios y las notarias* (revisadas-julio 2016), *Instrucción núm. 18: Subsanación de las faltas en los instrumentos públicos,* y la Regla 39 del Reglamento Notarial de Puerto Rico, *supra*.

En la inscripción se harán constar las siguientes menciones:
(a) el nombre del fideicomiso que se constituye;
(b) fecha y lugar de su constitución;
(c) número de escritura y nombre del notario ante quien se otorgó, en su caso;
(d) el nombre y la dirección del fideicomitente;
(e) el nombre y la dirección del fiduciario o fiduciarios y de sus sustitutos, si alguno; y
(f) el nombre y la dirección del fideicomisario o fideicomisarios y de sus sustitutos, si alguno.
El notario que otorga el acto de constitución del fideicomiso **tendrá la obligación de notificarlo a la Oficina de Inspección de Notarías no más tarde de los primeros diez días del mes siguiente a su otorgamiento.** [Negrillas nuestras].

Como surge del citado articulado, el registro está adscrito a la Oficina de Inspección de Notarias (ODIN) del Poder Judicial. Con el fin de dar cumplimiento al mandato legislativo, esta oficina diseñó varios formularios, entre ellos, el de *Notificación de Fideicomiso* (OAT-1687).

En este formulario se indica si el fideicomiso es con fines o sin fines de lucro, si está sujeto o no a una condición suspensiva o si el fideicomiso se constituyó en un testamento. En cuanto a este último, en el formulario también hay que indicar los datos de inscripción en el Registro de Poderes y Testamento. Igualmente hay que especificar los datos del fideicomitente y del fideicomisario, más sus sustitutos.

Además, el Artículo 5 de la Ley Núm. 219-2012, *supra*, de forma clara y, sin excepciones, establece que todo fideicomiso que no se inscriba en el registro es nulo.[26] En

---

[26] Véase, además, Lugo Irizarry, Carmen Teresa, *El fideicomiso como instrumento de planificación financiera y sucesoral*, Ed. SITUM, 2022, pág. 52.

nuestro estado de derecho es doctrina arraigada que cuando el lenguaje de una ley es claro, los tribunales venimos obligados a respetar la voluntad legislativa. Véase, *PR Fast Ferries, et al. v. AAPP*, 213 DPR 103, 110 (2023). Véase, además, *San Gerónimo Caribe Project v. Registradora*, 189 DPR 849, 866 (2013). Asimismo, es principio sustantivo que "lo que es "nulo" no puede ser objeto de "relevo" de parte de un tribunal pues lo nulo nunca tuvo eficacia alguna, nunca "nació" en derecho, nunca existió". *Montañez v. Policía de P.R.*, 150 DPR 917, 921 (2000).

En virtud, de las disposiciones legales y los criterios jurisprudenciales expuestos, procedemos a analizar la controversia que se encuentra ante nuestra consideración.

**III.**

En el presente recurso, nos corresponde determinar si el foro *a quo* erró al no expedir el auto solicitado y en consecuencia mantener la determinación del TPI que denegó declarar la nulidad de los fideicomisos. De acuerdo con el trámite procesal, los peticionarios por sí, y contando con su propia representación legal, presentaron una moción en la cual solicitaron la nulidad de los fideicomisos testamentarios por no estar inscrito en el Registro de Fideicomisos. En la alternativa, adujeron que el causante no facultó expresamente al albacea para constituir los fideicomisos, sino a administrarlos.

De otra parte, el recurrido indicó haber constituido los fideicomisos conforme a la voluntad del testador. Por lo

cual, argumentó que el "support trust" fue constituido el 30 de junio de 2023 mediante la Escritura Núm. 17 ante la Notaria Lillianne Marie Muñiz y que la referida escritura consta inscrita en el Registro de Fideicomisos según inscripción número, FDC-30062023-2475.[27] En cuanto al "life trust", indicó haberlo otorgado en el estado de Rhode Island, por lo cual no era necesaria su inscripción.

Adelantamos que no le asiste la razón al recurrido y que el Tribunal de Apelaciones erró al no expedir el recurso. Veamos.

Como surge del derecho antes consignado, el fideicomiso constituido en testamento establece varios requisitos para su validez. Entre estos, el testamento donde se constituyan los fideicomisos debe cumplir con las formalidades establecidas en el Código Civil, en la Ley Notarial y su reglamento.

En lo aquí pertinente, el testamento abierto tiene que ser otorgado en escritura pública, y notificado al Registro de Poderes y Testamento adscrito a la ODIN.[28] Asimismo, el fideicomiso que allí se constituya tiene que cumplir con los requisitos dispuestos en la Ley Núm. 219-2012, *supra*.

En el presente caso, el testamento del Sr. David John Allio Littauer fue otorgado mediante la Escritura Pública

---

[27] Véase nota alcalce núm. 4.

[28] A esos fines se creó el Formulario OAT 1658 titulado *Formulario Notificación de Testamento*. Los Registros de Poderes y de Testamentos, adscritos al Registro General de Competencias Notariales (RGCN), manejan las notificaciones relacionadas con el otorgamiento de poderes y de testamentos, así como las solicitudes de certificaciones relacionadas con estos. Véase, Instrucción General núm. 18, *supra*.

Núm. 16, sobre testamento abierto ante el notario Jorge A. Cartalaya Brao. Además, surge del expediente electrónico que el mismo fue inscrito en el Registro de Poderes y Testamento, según consta en la certificación expedida el 1 de mayo de 2023 por el Director de Inspección de Notarías del Tribunal Supremo de Puerto Rico.[29] Ahora bien, los fideicomisos allí constituidos tienen, a su vez, que cumplir con los requisitos dispuestos en la Ley Núm. 219-2012, *supra*.

De entrada, se requiere una expresión cierta del testador en la creación de un fideicomiso en su testamento. Así, el notario o la notaria otorgante del testamento ha de redactar en este el fideicomiso conforme a la voluntad del testador, adaptándola a las formalidades jurídicas, para su eficacia. Por lo tanto, y en lo aquí pertinente, veamos el contenido del testamento otorgado por el Sr. David John Allio Littauer.

En el testamento se consignó lo siguiente:[30]

---FOURTH: The Testator hereby gives, devises and bequeaths his entire state as follows:----------- -- (a) Pursuant to the provision of the Civil Code of Puerto Rico of 2020, specifically Article 1659, 31 L.P.R.A., the Testator declares as his **inheritors** his two (2) children, Giancarlo Alessandro Allio and Mia Maria Allio, who were both born on September twenty (20) two thousand five (2005) in Providence, Rhode Island, in equal shares of his total estate. […]------------------ --- (b) It is the Testator's intention that a portion of his estate that is herein devised equivalent to fifty percent (50%) of the Testator's liquid assets bequeathed to his two children shall be placed jointly or individually for their benefit in a trust fund (the "Life Trust") to be administered by the Testator's

---

[29] Véase Anejos, SUMAC Entrada Núm. 1.
[30] Véase apéndice del recurso a las págs. 61-75.

brother Michael Allio, or if Michael Allio is not available, said trust fund shall be administered by the Testator's other brother Mark Allio, hereinafter collectively referred to as "trustee", subject to the terms and conditions that are described later in this document. All of the income of said trust fund or trust funds shall be accumulated to principal and all of the principal of said trust fund or trust funds shall be preserved for the benefit of the aforementioned beneficiaries and the distributions be made as described below. When the children reach the age of eighteen (18), the trustee, in his sole discretion, may distribute a maximum of ten percent (10%) of the principal of said trust fund or trust funds for the children's college education and medical expenses.------------------

---(c) It is the Testator's intent that fifty percent (50%) of the liquid assets shall be placed in a separate trust fund with his brothers Michael Allio and Mark Allio as fiduciaries for the benefit, care and raising of the Testator's two children Giancarlo Alessandro and Mia Maria (**the "Support Fund"**). Said trust fund will be administered by Michael Allio who will determine an annual budget to be disbursed to the fiduciary which should never exceed the equivalent of ten percent (10%) of the total value of the trust fund at any given time. If Michael Allio is not available as administrator of the trust fund, then the trust fund shall be administered by Mark Allio, subject to the terms and conditions that are described later in this document. It is the Testator's intention that any assets left and available in the Support Fund be consolidated with the Life Trust fund once the children individually graduate from college and obtain gainful employment and/or establishes him or herself in a self supporting manner, at which time the Support Fund be terminated.----------------------------

--- (d) It is the Testator's intention that when each child graduate from college or university and obtains gainful employment, or establishes his or herself in a self supporting manner, in the field of his or her choice, an additional ten percent (10%) of the principal of his or her Life Trust may be distributed to the beneficiary for the sole purpose of securing a principal residence, rented or purchased, and the payment being applied to rent or down payment or the full price of the purchase, respectively.------------------------

---(e)Except as provided in subsection "f" hereunder, it is the Testator's intention that a distribution of one fourth (1/4) of the Trust

principal (the "distribution amount") be made to
each child out of their respective Life Trust when
the child reaches the age of twenty five (25) and
that two (2) further distributions equivalent to
one half (1/2) of the remaining assets in the fund
be made to that child at age thirty (30), and at
age thirty five (35) and thereafter that child's
Life Trust shall be terminated.------------------

De lo anterior, surge claramente la declaración expresa y la voluntad del testador de constituir dos fideicomisos. Los cuales fueron nombrados como "Life Trust" y "Support Fund". De igual manera, se individualizaron los bienes del patrimonio objeto del fideicomiso y claramente se designó al fiduciario (el recurrido), y los fideicomisarios (los peticionarios). En cuanto a la persona del fideicomitente, señalamos que en el fideicomiso testamentario el testador ostenta dos funciones: testador y fideicomitente.

En el testamento, el testador también estableció las reglas de acumulación, distribución y disposición de los bienes en los fideicomisos. Además, en la cláusula "THIRTEEN" del testamento se establecieron las facultades y deberes del fiduciario (Trustee), más las prohibiciones y limitaciones al ejercicio de su cargo.[31]

En resumen, el testamento -como "acto constitutivo"- contiene los requisitos de contenido dispuestos en el Artículo 8 de la Ley Núm. 219-2012, *supra*. Destacamos, además, que el testamento fue debidamente registrado en el Registro de Poderes y Testamento.[32] Por ende, de una lectura del testamento se desprende que en este quedaron constituidos

---

[31] Véase apéndice del recurso, pág.67.
[32] Íd., pág. 77.

los fideicomisos. En consecuencia, no le asiste la razón al recurrido al argumentar que en el testamento se le encomendó o comisionó a otorgar los fideicomisos. Si así hubiese sido, los fideicomisos no serían testamentarios.

**Ahora bien, la Ley Núm. 219-2012, *supra*, exige para la validez de esos fideicomisos, su inscripción en el Registro de Fideicomisos. Lo cual en el presente caso no ocurrió, según surge de la Certificación (CFID-2024-000045) expedida por el Director de la ODIN, a solicitud del Tribunal de Primera Instancia, el 15 de agosto de 2024.[33] Por lo tanto, a pesar de que los fideicomisos fueron expresamente constituidos en testamento, al no haberse cumplido con el requisito de su inscripción, estos son nulos.**

En el presente caso surge diáfanamente que en la Escritura Pública Núm. 17 el recurrido compareció como administrador del caudal para establecer un fideicomiso (Trust) que denominó "Allio Siblings Support Trust u/w of David John Allio". En la escritura pública se dispuso lo siguiente:[34]

> --------------------**APPEARS**------------------
> ---**AS SOLE PARTY: MICHAEL KELLY ALLIO LITTAUER,** also known as Michael K. Allio, of legal age, single, strategy consultant and resident of Providence, Rhode Island, in his capacity as Executor of the Estate of David John Allio Littauer, also known as David John Allio and David J. Allio, by the authority granted to him by the Tribunal De Primera Instancia Sala Superior De San Juan located in San Juan, Puerto Rico, and pursuant to the Will of David John Allio, dated on the twenty fifth (25th) day of May, two thousand twenty

---

[33] Véase SUMAC Entrada Núm. 275.
[34] Negrillas en el original. Véase apéndice del recurso, pág. 104.

one (2021) and registered under number 391-010 at the Registry of Wills of Puerto Rico ("the Will").

De otra parte, el recurrido otorgó un "Life Trust u/w of David John Allio, dated May 25, 2021" mediante documento otorgado en el estado de Rhode Island, Providence County, y notarizado el 5 de abril de 2023, por el notario público Leigh E. Furtado. En el apartado titulado "Establishment of Trust" se consignó lo siguiente:[35]

> THIS TRUST AGREEMENT, to be known as the "Life Trust u/w of David John Allio, dated May 25, 2021" is made by MICHAEL K. ALLIO, of Providence, Rhode Island in his capacity as Executor of the Estate of David John Allio by the authority granted to him by the Tribunal De Primera Instancia Sala Superior De San Juan located in San Juan, Puerto Rico and as directed to be established pursuant to the Will of David John Allio, dated May 25, 2021 (the "Will"), and in his capacity as the initial trustee named in said Will (the "Trustee") for the benefit of the children of DAVID JOHN ALLIO (who shall be referred to herein as the "Settlor" even though the trust is funded pursuant to the terms of the Will), namely, MIA MARIA ALLIO ("MIA") and GIANCARLO ALESSANDRO ALLIO ("GIANCARLO").

De ambos documentos se desprende que el recurrido constituyó los supuestos fideicomisos en su capacidad de administrador del caudal hereditario, según surge de las cartas testamentarias expedidas por el Tribunal de Primera Instancia el 21 de marzo de 2023 en el caso alfanumérico, SJ2023CV02101.[36] Estos fideicomisos podrán contener las

---

[35] Véase apéndice del recurso, pág. 82.
[36] Allí el foro primario expidió y otorgó a favor del aquí recurrido, el Sr. Michael Kelly Allio, Cartas Testamentarias de Albaceazgo y Administración de la herencia del causante, para actuar como Albacea en el ejercicio y ejecución del albaceazgo y la administración y partición de la herencia del causante, "la cual por disposición expresa del Testamento tendrá las facultades que le confiere la Ley y todas las que legalmente sean necesarias para cumplir su cometido; relevándolo de prestación de fianza por el término y con las facultades que le confiere

mismas cláusulas y los mismos beneficiarios establecidos en el testamento abierto otorgado el 25 de mayo de 2021 por el Sr. David John Allio Littauer. **No obstante, estos no son los fideicomisos constituidos en el testamento, y cuya nulidad aquí declaramos.**

En el testamento otorgado el 25 de mayo de 2021, el testador nombró al Sr. Michael Kelly Allio Littauer ejecutor del caudal hereditario, sin el pago de fianza y sin limitación de tiempo.[37] En sus argumentos, este señaló que, en cumplimiento de sus funciones, notarizó el 5 de abril de 2023, en el estado de Rhode Island, el documento necesario para constituir un "life trust" en dicho estado, y el 30 de junio de 2023 otorgó la Escritura Núm. 17 para constituir un "support trust". Ambos documentos fueron otorgados en documentos separados y con posterioridad al fallecimiento del Sr. David John Allio Littauer. De ello surge, que estos llamados fideicomisos, son distintos a los testamentarios cuya nulidad aquí declaramos.

En cuanto a los documentos otorgados por el recurrido, los peticionarios argumentaron que estos afectan su legítima y que el recurrido ha actuado en incumplimiento con las funciones dispuestas en el Código Civil de Puerto Rico. Por lo cual solicitan su destitución como administrador de los bienes. Asimismo, solicitaron que los bienes dispuestos en

---

el Código Civil y demás leyes de Puerto Rico". Véase apéndice del recurso, pág. 124.

[37] Véase cláusula "ELEVEN" del testamento. Apéndice del recurso, pág. 67.

el estado de Rhode Island sean transferidos a nuestra jurisdicción. No obstante, ninguna de estas controversias ha sido atendida por el Tribunal de Primera Instancia.

Así las cosas, corresponde al Tribunal de Primera de Primera Instancia determinar si el albacea se excedió en sus facultades al constituir los alegados fideicomisos denominados "Allio Siblings Support Trust u/w of David John Allio" y "Life Trust u/w of David John Allio, dated May 25, 2021". Asimismo, deberá analizar su validez y las formalidades de su otorgamiento. Por otro lado, es el foro primario quien se encuentra en mejor posición para emitir las órdenes que sean necesarias, y que permitan un traspaso ordenado de los bienes, de así entenderlo. Además, puntualizamos que en el presente recurso no hay evidencia de las cuentas bancarias y/o de las instituciones financieras donde se transfirieron lo activos.[38] El tiempo transcurrido en el caso es significativo y opera en contra de los derechos de los herederos testamentarios. Por lo cual, la vista evidenciaria deberá calendarizarse a la mayor brevedad.

En conclusión, erró el Tribunal de Apelaciones al no expedir el recurso de *certiorari*. Si bien, este foro intermedio tiene amplia discreción para determinar qué recurso expedir, enfatizamos que dicha discreción no es absoluta e ilimitada. Como vemos, contrario a lo resuelto,

---

[38] El estatuto de Rhode Island requiere la preparación de un memorando de fideicomiso, juramentado ante un notario público. El memorando debe cumplir con los requisitos dispuestos en "Rhode Island General Law", Titulo 34, Sección 34-4-27.

este es el momento más oportuno para examinar la determinación de nulidad de los fideicomisos testamentarios. La revisión del dictamen del Tribunal de Primera Instancia promueve la economía procesal y la rápida disposición del litigio.

En atención a lo aquí resuelto, no es necesario discutir los restantes errores, relacionados a las actuaciones del recurrido como albacea del caudal.

**IV.**

Por todo lo antes expuesto, se revoca el dictamen del Tribunal de Apelaciones, ya que debió atender el recurso instado. Además, se revoca la determinación del Tribunal de Primera Instancia, debido a que los fideicomisos testamentarios son nulos. Se devuelve el caso al Tribunal de Primera Instancia para que a la mayor brevedad posible señale vista evidenciaria conforme a lo aquí resuelto.

Camille Rivera Pérez
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionarios | CC-2025-0050 | *Certiorari* |
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionarios | | |

SENTENCIA

En San Juan, Puerto Rico, a 3 de febrero de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca el dictamen del Tribunal de Apelaciones, ya que debió atender el recurso instado. Además, se revoca la determinación del Tribunal de Primera Instancia, debido a que los fideicomisos testamentarios son nulos. Se devuelve el caso al Tribunal de Primera Instancia para que, a la mayor brevedad posible, señale vista evidenciaria conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco emitió la siguiente expresión conforme en parte y

disidente en parte, a la cual se unió el Juez Asociado señor Estrella Martínez:

"En Puerto Rico existen dos formas de crear Fideicomisos: por actos entre vivos en escritura pública o por testamento. Art. 7 de la Ley Núm. 219-2012, según enmendada, conocida como *Ley de Fideicomisos*, 32 LPRA sec. 3352. En ambos escenarios, estos deben ser inscritos para adquirir validez. Art. 5 de la Ley Núm. 219-2012, 32 LPRA 3351d. En este caso, la Opinión mayoritaria concluye acertadamente que los Fideicomisos en pugna (el *Life Trust* y *Support Trust*) son *mortis causa* y que, como no fueron inscritos, son nulos. Sin embargo, considera apropiado devolver este asunto al Tribunal de Primera Instancia para que se evalúe si los actos del Albacea para constituir los Fideicomisos por su cuenta fueron legítimos. Discrepo de tal proceder.

Resulta contradictorio concluir, por un lado, que la intención del Causante era crear los Fideicomisos en su testamento, pero por el otro, dejar la puerta abierta a que el Tribunal de Primera Instancia interprete que el Testador pretendió comisionar al Albacea a que los creara él.

Una lectura del testamento permite constatar que el Causante no revistió al Albacea con esa facultad. En cuanto a los Fideicomisos *Life Trust* y *Support Trust*, la encomienda del Albacea iba dirigida a que este colocara los bienes líquidos del Causante en los entes jurídicos y, posteriormente, los administrara. Esto, a diferencia del *Allio Family Trust*, para el cual el Testador expresamente autorizó que sus hermanos —siendo uno de ellos el aquí Albacea— pudieran <u>establecer</u> y manejarlo de suscitarse algunas de las circunstancias previstas en el instrumento público. Véase, Apéndice del *Certiorari*, págs. 62-64.

Debe tenerse en cuenta que, en ausencia de expresión del Testador, las facultades que tiene un Albacea son las contempladas en el Código Civil. Art. 1740 del Código Civil de 2020, 30 LPRA sec. 11512. En ese sentido, se debe considerar que el Albacea solo puede enajenar los bienes de la herencia o gravarlos cuando el Testador <u>expresamente</u> lo ha autorizado. En defecto de autorización, es necesario el consentimiento unánime de los herederos o autorización judicial. Art. 1741 del Código Civil de 2020, 30 LPRA sec. 11513.

Así pues, al haberse determinado que los Fideicomisos impugnados son nulos, las actuaciones

que tomó el Albacea para constituirlos —sin autorización <u>expresa</u> del Causante— se deben entender igualmente *ultra vires*. Así procedía haberse concluido. Con esa premisa de fondo, correspondía entonces devolver este asunto al foro primario para que dicho foro tomase las salvaguardas correspondientes. De esa forma, se hubiese provisto una solución más concreta y útil al caso y, a su vez, se prevendría el surgimiento de controversias futuras sobre el mismo asunto".

El Juez Asociado señor Estrella Martínez emitió una Opinión conforme en parte y disidente en parte, a la cual se unió la Jueza Asociada señora Pabón Charneco.


                         Bettina Zeno González
              Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionarios | CC-2025-0050 | Certiorari |
| MICHAEL ALLIO (en su capacidad de albacea y fiduciario del Fideicomiso Testamentario del Caudal de David John Allio Littauer)<br><br>Recurrido<br><br>v.<br><br>CARMEN SANTIAGO CHARDÓN (por sí y en representación de sus hijos) y otros<br><br>Peticionarios | | |

Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une la Jueza Asociada señora PABÓN CHARNECO.

En San Juan, Puerto Rico, 3 de febrero de 2026.

Esta vez teníamos la oportunidad de atender si, dadas las circunstancias particulares de este caso y la figura del albacea en nuestro ordenamiento jurídico, eran válidos ciertos fideicomisos, unos de carácter testamentario que no

fueron notificados al Registro Especial de Fideicomisos, y otros fundados por el albacea con posterioridad al fallecimiento del testador, en un intento de constituir los testamentarios.

Acertadamente, la Opinión mayoritaria declara la nulidad de los fideicomisos que el testador preceptuó en su *Testamento Abierto* porque no fueron notificados al Registro Especial de Fideicomisos, tal y como requiere el Art. 5 de la Ley de Fideicomisos, *infra*. Por entender correcto ese proceder, estoy conforme en ese extremo.

No obstante, a la misma vez, se devuelve el caso al Tribunal de Primera Instancia para que este determine si el albacea se excedió en sus facultades cuando constituyó los fideicomisos por su propia cuenta. Así, se deja la puerta abierta para que se valide una actuación del albacea que fue ejecutada sin autorización expresa del testador y sin facultad estatutaria. Como soy del criterio de que tales acciones deberían ser declaradas *ultra vires*, respetuosamente discrepo del curso dispositivo adoptado en esta ocasión.

Advierto, además, que la posibilidad de validar que un albacea pueda, sin autorización testamentaria expresa, otorgar fideicomisos no registrados como parte de sus facultades en ley, supone el riesgo de tornar en inoficioso el Registro Especial de Fideicomisos, su propósito y el requisito de registrar los fideicomisos testamentarios. Ese

resultado atentaría contra la letra clara y la intención del Art. 5 de la Ley de Fideicomisos, *infra*.

Expuesto este breve contexto, esbozaré las razones que motivan esta desavenencia, no sin antes examinar las circunstancias procesales más relevantes del caso.

**I**

Sobre los hechos de este caso no hay controversias mayores.

El 25 de mayo de 2021, el Sr. David John Allio Littauer (señor David Allio Littauer o Causante) otorgó un *Testamento Abierto* en el que: (1) instituyó a sus dos hijos como herederos únicos y universales (peticionarios); (2) designó dos fideicomisos a favor de estos, uno nombrado *Life Trust* y otro *Support Trust* (Fideicomisos Testamentarios); y (3) nombró albacea y fiduciario de los fideicomisos a su hermano, el Sr. Michael Allio (señor Michael Allio o albacea Michael Allio).[1] Ninguno de estos dos fideicomisos fue notificado al Registro Especial de Fideicomisos.[2]

Posteriormente, el 12 de febrero de 2023, el señor David Allio Littauer falleció y, el 3 de marzo de 2023, el señor Michael Allio aceptó el cargo de albacea.[3]

---

[1] Entrada Núm. 1 del expediente digital del caso SJ2023CV07752 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

[2] Entrada Núm. 275 del expediente digital del caso en el SUMAC-TPI.

[3] Entrada Núm. 1 del expediente digital del caso en el SUMAC-TPI.

Una vez iniciada por el señor Michael Allio la solicitud de división de la comunidad hereditaria, este informó que el 5 de abril de 2023 constituyó un fideicomiso titulado *Life Trust* en el estado de Rhode Island y que el 30 de junio de 2023 otorgó otro nombrado *Support Trust* en Puerto Rico.[4]

En desacuerdo, la Sra. Carmen Santiago Calderón (señora Santiago Calderón), madre de los hijos del señor David Allio Littauer, solicitó que los fideicomisos creados por el albacea Michael Allio fueran declarados nulos.[5] Según argumentó, los Fideicomisos Testamentarios no fueron registrados.

En respuesta, el albacea Michael Allio arguyó que la señora Santiago Calderón carecía de legitimación activa para reclamar la nulidad de los fideicomisos y, en los méritos, planteó que el *Support Trust* fue registrado al momento de crearse en Puerto Rico, mientras que no era necesario notificar el *Life Trust* porque fue constituido en Rhode Island.[6]

---

[4] Íd. Nótese que el señor Michael Allio creó estos fideicomisos con los mismos nombres que los Fideicomisos Testamentarios que dispuso el señor David Allio Littauer. Asimismo, según una certificación del Registro Especial de Fideicomisos, el fideicomiso titulado *Support Trust*, creado por el señor David Allio Littauer, fue notificado al Registro Especial de Fideicomisos el 6 de julio de 2023. Véase Entrada Núm. 52 del expediente digital del caso en el SUMAC-TPI.

[5] Entradas Núm. 20 y 32 del expediente digital del caso en el SUMAC-TPI, entre otras.

[6] Entrada Núm. 52 del expediente digital del caso en el SUMAC-TPI.

Tras múltiples trámites, el 8 de enero de 2024, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de nulidad.[7]

El 12 de julio de 2024, los peticionarios, ya en su carácter personal, solicitaron que se declararan nulos tanto los Fideicomisos Testamentarios, por no haber sido notificados en el Registro Especial de Fideicomisos, como los creados por el albacea Michael Allio, por haberse establecido sin facultad para ello.[8]

El 15 de agosto de 2024, los peticionarios sometieron al foro primario una certificación emitida por la Oficina de Inspección de Notarías (ODIN) en la que se informó que del Registro Especial de Fideicomisos no surgía la notificación de los Fideicomisos Testamentarios.[9]

A pesar de ello, el 20 de agosto de 2024, el Tribunal de Primera Instancia sostuvo su determinación de declarar no ha lugar a la solicitud de nulidad.[10]

---

[7] Entrada Núm. 120 del expediente digital del caso en el SUMAC-TPI.

El 17 de enero de 2024, la señora Santiago Calderón solicitó reconsideración, la cual fue denegada el 14 de febrero de 2024. Véase Entrada Núm. 138 del expediente digital del caso en el SUMAC-TPI.

[8] Entrada Núm. 237 del expediente digital del caso en el SUMAC-TPI.

[9] Entrada Núm. 275 del expediente digital del caso en el SUMAC-TPI.

[10] Entrada Núm. 291 del expediente digital del caso en el SUMAC-TPI.

Inconformes, tanto el señor Michael Allio como los peticionarios acudieron al Tribunal de Apelaciones, el cual denegó expedir los recursos presentados por ambas partes.[11]

Acto seguido, los peticionarios promovieron el recurso de epígrafe. Ante nos, reiteraron su petitorio bajo el mismo fundamento: los fideicomisos son nulos porque no fueron notificados al Registro Especial de Fideicomisos, según requiere la ley. Igualmente, argumentaron que el *Support Trust* afecta su legítima, que procedía inscribir en Puerto Rico el fideicomiso creado en Rhode Island, y que correspondía remover al señor Michael Allio de sus funciones como albacea por serio incumplimiento de sus obligaciones y, en consecuencia, ordenarle reembolsar los gastos no autorizados e irrazonables.

Por su parte, el señor Michael Allio sostuvo que él constituyó los fideicomisos según la voluntad del Causante. También, reiteró que el *Support Trust* se constituyó en Puerto Rico el 30 de junio de 2023 mediante una Escritura Pública que se notificó al Registro Especial de Fideicomisos, mientras que el *Life Trust* se otorgó en otro estado y, por ello, no se requiere su notificación al Registro. Además, negó que se hubiesen cometido los demás errores señalados por los peticionarios o que existiera jurisdicción para atenderlos.

---

[11] Los recursos fueron atendidos por el Tribunal de Apelaciones mediante una *Resolución* del 19 de diciembre de 2024 en el caso identificado como KLCE202401032 consolidado con el KLCE202401060.

Con este escenario en mente, repasaré el derecho que informa y sustenta tanto mi conformidad como mi disidencia.

## II

### A.

La Ley de Fideicomisos, Ley Núm. 219-2012, según enmendada, 32 LPRA sec. 3351 *et seq.*, fue promulgada para ordenar en una ley especial todo el andamiaje jurídico aplicable a los fideicomisos con el fin de promover su uso en temas de familia, sucesiones y desarrollo económico. Exposición de motivos de la Ley Núm. 219-2012.

Entre sus disposiciones, la Ley de Fideicomisos creó el Registro de Fideicomisos como un catastro adscrito a la ODIN. Art. 5 de la Ley de Fideicomisos, 32 LPRA sec. 3351d. En esa faena, se impuso un importante requisito: "[t]odo fideicomiso constituido en Puerto Rico se inscribirá en el Registro Especial de Fideicomisos, bajo pena de nulidad". (Subrayado nuestro). Íd. Junto a ello, se dispuso que aquel notario o aquella notaria que otorgue un acto de constitución de fideicomiso tiene la obligación de notificarlo a la ODIN no más tarde de los primeros (10) días del mes siguiente a su otorgamiento. Íd. Así, la intención legislativa quedó diáfanamente plasmada: la consecuencia de no notificar oportunamente el acto constitutivo de fideicomiso es la nulidad del fideicomiso.

De esa forma, este requisito no es poca cosa. Sobre el mismo, nos ilustra la Dra. Carmen Teresa Lugo Irizarry que el propósito detrás de la notificación y publicidad del

Registro Especial de Fideicomisos es evitar los fideicomisos secretos, mejorar el tráfico jurídico, dar conocimiento a acreedores y agencias gubernamentales, así como proveer mayor seguridad, confianza y garantías. C. T. Lugo Irizarry, *Análisis Crítico sobre la Ley de Fideicomisos de Puerto Rico*, 2da Ed., San Juan, Ediciones SITUM, 2017, pág. 43-44. Según abunda la doctora Lugo Irizarry, la nulidad del fideicomiso se impone como consecuencia de la falta de notificación oportuna al Registro como <u>la manera de obligar a los constituyentes de un fideicomiso a inscribirlo</u>. Íd., pág. 44. De este modo, el Registro Especial de Fideicomisos fue concebido como un mecanismo con un funcionamiento similar al del Registro de Poderes y Testamentos y al del Registro de Corporaciones. Íd.

**B.**

En el derecho de sucesiones, la voluntad del testador o de la testadora es la ley de la sucesión. *Vilanova et al. v. Vilanova et al.,* 184 DPR 824, 858 (2012); *Moreda v. Rosselli*, 150 DPR 473, 480 (2000); *Vda. de Sambolín v. Registrador*, 94 DPR 320, 327 (1967). Más allá de su matiz interpretativo, ese axioma implica que un testamento válido será la principal fuente de las directrices del testador en cuanto a lo que quiere que ocurra con su caudal tras su fallecimiento. En ese sentido, es allí donde se encontrarán las disposiciones del testador relativas a las facultades o deberes de los instituidos por él.

En ello, coincide el Código Civil, 31 LPRA sec. 5311 *et seq.*, al reglamentar la figura del albacea. Tres son los artículos relevantes en ese respecto. Primero, el Art. 1739 del Código Civil, 31 LPRA sec. 11511, define que el albacea es la persona que el testador designa <u>expresamente</u> para ejecutar o vigilar la ejecución de su última voluntad.

Segundo, el Art. 1740 del Código Civil, 31 LPRA sec. 11512, enumera ciertas facultades legales generales para que el albacea cumpla su encomienda <u>en ausencia de instrucciones expresas</u> del testador. En concreto, ese articulado expone:

> <u>En ausencia de expresión del testador</u>, el albacea tiene en el cumplimiento de su encomienda las facultades siguientes:
>
> (a) tomar las precauciones necesarias para la conservación y la custodia de los bienes;
> (b) ejecutar todo lo ordenado en el testamento y, siendo legal, sostener su validez;
> (c) intervenir en los litigios o incidentes que se susciten sobre los bienes hereditarios;
> (d) pagar los legados, con el consentimiento de los herederos; y
> (e) realizar la partición de la herencia cuando no hay contador partidor. (Subrayado nuestro). Íd.

Tercero, el Art. 1741, 31 LPRA sec. 11513, impone un límite significativo al campo de acción del albacea al preceptuar que este no puede enajenar o gravar los bienes de la herencia sin una <u>autorización expresa</u> del testador o, en su defecto, sin el consentimiento unánime de los herederos o la autorización de un tribunal.

A la luz de lo anterior, resulta palmario que, ausente una autoridad testamentaria expresa, las facultades del

albacea son las que están enumeradas taxativamente en el Art. 1740 y sujetas a los límites del Art. 1741 del Código Civil.

### III

Según adelanté, en esta ocasión nos correspondía evaluar la validez tanto de los Fideicomisos Testamentarios como de los fideicomisos que creó el señor Michael Allio, quien reclamó haber actuado dentro de las facultades conferidas como albacea. En otras palabras, lo que está en cuestión es si procedía la creación de fideicomiso alguno.

Como coincido con la declaración de nulidad de los Fideicomisos Testamentarios porque estos no fueron notificados al Registro Especial de Fideicomisos, tal y como requiere el Art. 5 de la Ley de Fideicomisos, *supra*, estoy conforme con esa parte de la Opinión que hoy suscribe una mayoría de este Tribunal. Luego de que, el 25 de mayo de 2021, el señor David Allio Littauer válidamente dispusiera en su testamento la creación de los Fideicomisos Testamentarios, transcurrió el término establecido en el referido Artículo para que estos fueran notificados al Registro Especial de Fideicomisos.[12] La drástica consecuencia de ese incumplimiento es la nulidad de los Fideicomisos Testamentarios.

Ahora bien, respetuosamente difiero en lo que concierne a la devolución del caso al Tribunal de Primera Instancia

---

[12] La ODIN así lo certificó. Véase Entrada Núm. 275 del expediente digital del caso en el SUMAC-TPI.

para que este determine si el albacea se excedió en sus facultades cuando constituyó los fideicomisos por su propia cuenta. Sostengo que cuando tomó la iniciativa de crearlos en un intento de constituir los inválidos Fideicomisos Testamentarios, el señor Michael Allio no ejecutó lo que ordenó el *Testamento Abierto*, ejerció funciones que el Causante no le delegó expresamente y obró fuera de las facultades que le concede el Código Civil al albacea. En ese sentido, reitero que el señor Michael Allio actuó sin autoridad testamentaria o legal y, por eso, el curso correcto hubiese sido declarar también la nulidad de los fideicomisos que este creó. Esta determinación es un asunto de estricto derecho que podemos atender en esta etapa sin necesidad de delegarlo al foro primario.

En este respecto, un examen del *Testamento Abierto* demuestra de manera evidente que el señor David Allio Littauer no proveyó para que el albacea creara los fideicomisos por su cuenta. Por cierto, en el *Testamento Abierto* no se le encomendó ni comisionó al albacea otorgar los fideicomisos. Por ese motivo, estimo que el albacea Michael Allio actuó más allá de lo que dispuso el testador.

Distinto a ello, lo que sí hizo el Causante fue disponer unos Fideicomisos Testamentarios. Por eso, tampoco es posible concebir que la disposición testamentaria en la que se instituyeron los fideicomisos pueda ser, a la misma vez, la creación de unos fideicomisos testamentarios **y** la encomienda expresa o implícita al albacea de crearlos tras

su muerte. Al contrario, ante nos tenemos un detallado *Testamento Abierto* que diseña una clara estructura de fideicomisos para apoyar a los hijos del Causante.[13] En él, también se designa al señor Michael Allio como albacea, administrador de los Fideicomisos Testamentarios y fiduciario junto con su otro hermano. Todavía más, el Causante, en su última voluntad, sí le delegó al albacea la facultad para constituir otro fideicomiso distinto a los testamentarios, titulado *Allio Family Trust*, en caso de que sus hijos le premurieran, repudiaran la herencia o no la pudiesen aceptar.[14] De esa forma, no surge del *Testamento Abierto* una disposición a favor de que el albacea establezca los fideicomisos, ni siquiera en caso de la nulidad de los Fideicomisos Testamentarios.

Visto de este modo, ausente una autoridad testamentaria expresa para crear los fideicomisos, corresponde evaluar si el albacea Michael Allio contaba con alguna otra facultad legal para actuar de la manera en que lo hizo. En esa tarea

---

[13] De hecho, el *Testamento Abierto* es claro en cuanto a los demás deseos del señor David Allio Littauer. Por ejemplo, este ordenó: (1) la cremación de su cuerpo y la dispersión de sus cenizas en el mar por este haber sido parte importante de su vida; (2) la utilización de parte de su caudal para una fiesta para que su familia y amigos se reunieran y celebraran su vida; (3) su deseo de que sus hijos aprendieran a navegar, así como el uso de su caudal para ello; (4) su deseo de que sus hijos pasaran al menos dos semanas al año con los padres del Causante, sus tíos y primos; y (5) todo un esquema para apoyar económicamente a sus hijos en el caso de la muerte de ambos padres.

[14] Este fideicomiso operaría en beneficio de cualquier descendiente de los padres del Causante.

es fundamental atender lo que dispone el Código Civil en cuanto al albacea y sus facultades.

Según reseñé, en virtud del Art. 1739 del Código Civil, *supra*, el albacea está encargado de ejecutar o vigilar la ejecución de la última voluntad del testador. A su vez, el Art. 1740, *supra*, enumera ciertas facultades legales generales para que el albacea cumpla su encomienda en ausencia de instrucciones expresas del testador. Entre estas, se destacan por su pertinencia: (1) tomar las precauciones necesarias para conservar y custodiar los bienes; y (2) ejecutar todo lo ordenado en el testamento y sostener su validez. A mi juicio, ninguna de estas facultades incluye la tarea no delegada por el Causante de crear los inválidos Fideicomisos Testamentarios y transferir a ellos los bienes que constituyen el caudal hereditario.

Finalmente, el Art. 1741 del Código Civil, *supra*, impide que el albacea enajene o grave los bienes de la herencia sin autorización expresa del testador o, en su defecto, sin el consentimiento unánime de los herederos o la autorización de un tribunal. Así, resulta diáfano que las facultades del albacea, según codificadas, no incluyen la autoridad para crear fideicomisos sin permiso expreso del testador. Por tanto, reafirmo que el señor Michael Allio también excedió las funciones supletorias que le reconoce el Código Civil al cargo del albacea.

Dicho todo esto, además, al dejarse la puerta abierta para que el foro primario ratifique los fideicomisos creados

por el albacea Michael Allio, sin autorización testamentaria ni estatutaria expresa, se tornaría en inoficiosa la creación del Registro Especial de Fideicomisos, su propósito y la intención legislativa que motivó el requisito de notificación como requisito necesario para la validez de un fideicomiso. Mediante el Registro y su publicidad, la ley busca evitar los fideicomisos secretos y proporcionar mayor seguridad, confianza y garantías al tráfico jurídico. Para lograrlo, la Asamblea Legislativa impuso la obligación de notificar los actos constitutivos de fideicomiso dentro de un término particular. La consecuencia de incumplirse tal deber es la nulidad. El propósito de ese diseño se derrota si se permite que un albacea otorgue, sin encomienda para ello, unos fideicomisos que originalmente fueron dispuestos en un testamento, pero no notificados al Registro conforme a la Ley de Fideicomisos, *supra*.

De acuerdo con lo anterior, ausente una autorización expresa contingente del Causante en caso de una declaración de invalidez o falta de cumplimiento con el requisito de notificación, la consecuencia es la nulidad de los Fideicomisos Testamentarios y aquellos creados por el señor Michael Allio en su carácter de albacea. Permitir que se eluda ese resultado sin que el testador lo haya previsto significaría, de su faz, traicionar la intención que motivó requerir el registro de los fideicomisos y prescribir la nulidad como sanción por su incumplimiento.

El riesgo que esto último implicaría es que, incumplida la Ley de Fideicomisos, comoquiera se pueda crear un fideicomiso testamentario sin notificarlo al Registro y sin que el testador así lo haya ordenado. En efectos prácticos, declarar nulos los fideicomisos testamentarios, pero contemplar que luego el albacea pueda crearlos y registrarlos correctamente, equivaldría, en esencia, a subsanar lo que en un inicio no se hizo, como si los fideicomisos iniciales hubieran sido constituidos de forma válida desde un principio. Ese resultado atentaría contra la letra clara y la intención del Art. 5 de la Ley de Fideicomisos, *supra*.

## IV

Por los fundamentos expuestos, estoy conforme con aquella parte de la Opinión mayoritaria que declara nulos los Fideicomisos Testamentarios por no haber sido notificados según requiere el Art. 5 de la Ley de Fideicomisos, *supra*. Por otro lado, respetuosamente disiento en cuanto a la devolución del caso al Tribunal de Primera Instancia para que revise si el señor Michael Allio se excedió en el ejercicio de sus facultades cuando creó los fideicomisos por su cuenta y si estos son válidos. En su lugar, también hubiese declarado nulos y *ultra vires* estos últimos fideicomisos constituidos por el albacea Michael Allio.

Luis F. Estrella Martínez
Juez Asociado