ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROBERTO CARLOS PIÑEIRO COLÓN<br><br>**Parte peticionaria**<br><br>v.<br><br>DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS<br><br>**Parte recurrida** | TA2026CE00086 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Municipal de **Mayagüez**<br><br>Caso núm.:<br>**MZ2025MU00473**<br><br>Sobre:<br>**RECURSO DE REVISIÓN LEY 22** |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de febrero de 2026.

Comparece ante nos, Roberto Piñeiro Colón, en adelante, Piñeiro Colón o peticionario, solicitando que revisemos la determinación *"No Ha Lugar"* sobre el Recurso de Revisión de Infracción de Tránsito, instando por este ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en adelante, TPI-Mayagüez, la cual fue notificada el 21 de noviembre de 2025.

Por los fundamentos que expondremos a continuación, *revocamos* parcialmente el dictamen recurrido.

**I.**

El 29 de octubre de 2025, mientras transitaba en la Carretera Candelaria en el Municipio de Mayagüez, el peticionario fue detenido por un oficial de tránsito que manejaba en una motora.[1] El oficial le administró dos (2) boletos de tránsito, uno de estos con el número 40944293. Este último respondió a una alegada infracción al Artículo 10.25 de la Ley Núm. 22-2000, mejor

---

[1] Apéndice del recurso, Anejo 2.

conocida como la Ley de Vehículos y Tránsito de Puerto Rico, en adelante, Ley Núm. 22-2000, 9 LPRA sec. 5305.

El 3 de noviembre de 2025, Piñeiro Colón presentó un *"Recurso de Revisión de Multa Administrativa de Tránsito"* por *derecho propio,* ante el TPI-Mayagüez.[2] En el mismo, impugnó ambos boletos, e indicó que, al momento de la intervención del oficial de tránsito, este se encontraba haciendo uso de la aplicación *Google Maps* como sistema de posicionamiento global.

El día 21 de noviembre de 2025 se celebró la Vista de Recurso de Revisión de Multa Administrativa.[3] Surge que el oficial de tránsito que expidió el boleto *no compareció a la misma.* Sin embargo, luego de escuchar a Piñeiro Colón, el TPI-Mayagüez emitió una *"Resolución Sobre Recurso de Revisión de Multa Administrativa de Tránsito",* la cual notificó el mismo día. En esta, declaró *"Con Lugar"* el recurso con relación a una de las multas, pero declaró *"No Ha Lugar"* el referente al boleto por el uso del teléfono celular.

Inconforme con ello, el 8 de diciembre de 2025, Piñeiro Colón radicó una *"Moción de Reconsideración"* ante el Foro Primario,[4] que fue declarada *"No Ha Lugar".*[5]

Posteriormente, el 8 de enero de 2026, Piñeiro Colón presentó un recurso de *certiorari* ante nos, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de Primera Instancia al sostener la infracción por uso de celular a pesar de la incomparecencia del agente querellante y la consiguiente ausencia total de prueba estatal, en violación a la regla de carga de la prueba y al debido proceso de ley.

---

[2] Apéndice del recurso, Anejo 1.
[3] Transcripción de la prueba oral, sometida por el peticionario el 22 de enero de 2026.
[4] Apéndice del recurso, Anejo 4.
[5] Copia de esta determinación del Foro Recurrido no surge del recurso. Sin embargo, ambas partes reconocen y aceptan que el 9 de diciembre de 2025, el TPI-Mayagüez declaró la petición de reconsideración *"No Ha Lugar".*

**SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al no analizar ni determinar la forma y manera del alegado uso del celular, elemento indispensable para concluir una violación al 9 L.P.R.A. § 5305, que distingue entre usos prohibidos y usos expresamente permitidos.

**TERCER ERROR:** Erró el Tribunal de Primera Instancia al ignorar la excepción expresa que permite el uso del teléfono móvil "cuando sea para utilizar el Sistema de Posicionamiento Global (GPS)", y al aplicar un estándar absoluto según el cual el mero uso del celular equivale a infracción, en abierta contradicción con el texto de la norma.

**CUARTO ERROR:** Erró el Tribunal de Primera Instancia al emitir una determinación desprovista de evidencia sustancial, basada exclusivamente en presunciones y en una apreciación equivocada del derecho, lo que la torna arbitraria y contraria al debido proceso de ley.

El 22 de enero de 2026, el peticionario presentó ante esta Curia la transcripción oral de la vista del recurso de revisión objeto de la controversia de epígrafe. El 23 de enero de 2026 emitimos una "Resolución" en la que le concedimos hasta el 3 de febrero de 2026 al Departamento de Transportación y Obras Públicas, en adelante, DTOP o recurrido, para expresarse en cuanto al recurso, según dispone la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56-57, 215 DPR ___ (2025). Además, le indicamos que en el mismo término, presentara sus objeciones, si alguna, sobre la transcripción de la prueba oral sometida por Piñeiro Colón.

Así, el 3 de febrero de 2026, el Procurador General de Puerto Rico, en representación del DTOP, compareció mediante *"Escrito en Cumplimiento de Resolución"*, oponiéndose a la expedición del recurso de autos. Perfeccionado el recurso ante nuestra consideración, procedemos a resolver.

**II.**

**A. Certiorari**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Allio v. Santiago Chardón,* 2026 TSPR 13, 217 DPR ___ (2026); *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020).

El recurso ante nuestra consideración está regulado por una ley especial, la Ley 22-2000, *supra.* La misma establece un proceso de revisión de multas de tránsito en el Foro Primario. Ahora bien, nada establece el antedicho estatuto con relación al proceso apelativo para impugnar la determinación del Tribunal de Primera Instancia, respecto a estas multas. Sin embargo, el Artículo 4.006, inciso (b) de la Ley de la Judicatura, 4 LPRA 24y, dispone que el Tribunal de Apelaciones entenderá "[m]ediante auto de *Certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia".

Esta discreción ha sido definida en nuestro ordenamiento jurídico como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No figura como un permiso para actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001). Por consiguiente, para determinar si procede la expedición de este recurso debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, pág. 59.

La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

La precitada Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Reglamento del Tribunal de Apelaciones, supra, pág. 59; *Allio v. Santiago Chardón*, supra; *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo

que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Además, es norma reiterada en nuestro ordenamiento que la apreciación de la prueba corresponde, originalmente, al foro sentenciador. Los tribunales apelativos solo intervenimos con dicha apreciación cuando se demuestra satisfactoriamente la existencia de pasión, prejuicio, parcialidad o error manifiesto. *Rivera Menéndez v. Action Services*, 185 DPR 431, 448 (2012); *Pueblo v. Maisonave*, 129 DPR 49 (1991). Es ante la presencia de alguno de estos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica, sea inherentemente increíble o claramente imposible, que se intervendrá con la apreciación efectuada. *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002); Regla 42.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. La política jurídica tras esta normativa es dar deferencia a un

proceso que ha ocurrido esencialmente ante los ojos del juzgador. Es ese juzgador de instancia quien observa el comportamiento de los testigos al momento de declarar y partiendo de eso adjudicó la credibilidad que le mereció. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 357 (2009).

### B. Uso del celular al conducir un vehículo de motor

En la actualidad, la normativa que encausa los asuntos relevantes al tránsito vehicular por las vías públicas de nuestro país se encuentra en la Ley Núm. 22-2000, *supra*, que sustituyó la Ley Núm. 141 de 20 de julio de 1960. En la Exposición de Motivos de la Ley Núm. 22-2000, *supra*, el legislador expuso que "[e]ntre las obligaciones más importantes del Estado moderno se incluyen las de promover y velar por la seguridad pública en todas sus variantes, simplificar y agilizar las gestiones de los ciudadanos en su contacto diario con los organismos gubernamentales, y mantener al día con los últimos adelantos científicos y tecnológicos aquellas leyes y reglamentos que tienen mayor impacto sobre las actividades cotidianas del pueblo". A través del precitado estatuto, el Legislador estableció, lo que denominó en dicha Exposición de Motivos, "una reglamentación ordenada y eficiente en materia de vehículos y tránsito".

Pertinente al caso de marras, el 11 de octubre de 2011, el legislador aprobó la Ley Núm. 201-2011, mediante la cual añadió el nuevo artículo 10.25 a la Ley Núm. 22-2000 a los fines de *prohibir el uso de teléfonos móviles o inalámbricos mientras se conduce un vehículo de motor*. Al aprobar dicha Ley, el legislador reconoció en su Exposición de Motivos la extraordinaria proliferación del uso de estos dispositivos en la sociedad actual, convirtiéndose así en un elemento esencial de la vida diaria de la gran mayoría de los ciudadanos. No obstante, advirtió que deben evitarse distracciones innecesarias al conducir un vehículo de

motor que pudiesen provocar accidentes de tránsito, así como actividades que pudiesen afectar la habilidad y reflejos al conducir, tales como conversar por teléfono y enviar o recibir mensajes de texto. Exposición de Motivos, Ley Núm. 201-2011.

Por lo tanto, estando bajo su responsabilidad, el legislador comprendió la urgente necesidad de restringir el uso de celulares mientras se conduce un vehículo de motor, puesto que "miles de conductores no tienen conciencia del peligro inherente a la actividad de conducir un vehículo de motor", evidenciado por los cientos de accidentes que se reportaban debido al descuido o negligencia de las personas. *Íd.*

Cabe resaltar que la aprobación de la Ley Núm. 201-2011 no modifica, altera, limita ni menoscaba de manera alguna los derechos que se le ha reconocido a los conductores de vehículos de motor en nuestro ordenamiento jurídico. Más bien, el precitado estatuto va dirigido a "garantizar la seguridad y, por ende, el derecho a la vida de nuestros conductores y peatones". Exposición de Motivos, Ley Núm. 201-2011.

Así, el Artículo 10.25 de la Ley Núm. 22-2000, *supra*, sec. 5305, condena el uso de teléfonos móviles o inalámbricos mientras se conduce un vehículo de motor. Sin embargo, el Legislador estableció, de manera taxativa, las instancias en las que la prohibición del uso del celular al conducir un vehículo de motor *no sería de aplicación*:

> a) cuando el vehículo no se encuentre en marcha y no esté impidiendo el tráfico;
>
> b) cuando se generen llamadas o comunicaciones a agencias del orden público o relacionado a algún tipo de emergencia médica, o de seguridad, entendiéndose por emergencia una situación de riesgo inmediato para la salud, vida o propiedad;
>
> ***c) cuando sea para utilizar el Sistema de Posicionamiento Global (GPS);***

d) cuando sea para iniciar o terminar una llamada; ni e) a aquellos choferes de vehículos destinados a atender situaciones de emergencia mientras atiendan emergencias reales, según lo definido en esta Ley.

9 LPRA sec. 5305.
(Énfasis nuestro).

### C. Debido Proceso de Ley

Sabido es que la Constitución de Puerto Rico reconoce una serie de derechos, incluido entre estos el debido proceso de ley. Const. ELA, Art. II, 1 LPRA sec. 7. Esta garantía tiene dos (2) vertientes, a saber, la sustantiva y *la procesal. Katiria's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR __ (2025). La vertiente sustantiva del debido proceso de ley busca proteger los derechos fundamentales de la persona, mientras que la vertiente procesal le impone al Estado la obligación de garantizar un proceso justo y equitativo cuando se interfiera con los intereses de libertad y de propiedad del individuo. *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018); *Domínguez Castro et al. v. E.L.A. I,* 178 DPR 1, 35 (2010). La jurisprudencia normativa ha identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. *Katiria's Café v. Mun. de San Juan,* supra; *Pueblo v. Pagán Rojas et al.,* 187 DPR 465, 480 (2012); *Garriga Villanueva v. Mun. San Juan,* 176 DPR 182, 197 (2009).

Sobre la *vertiente procesal,* nos dice el Tribunal Supremo que esta le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo solo ocurra mediante un proceso justo y equitativo. Esta protección se activa cuando existe un interés individual de libertad o de propiedad. *Pueblo v. Montero Luciano,* 169 DPR 360, 371 (2006); *Rafael Rosario & Assoc. v. Dpto. Familia,* 157 DPR 306, 330 (2002). Nuestra jurisprudencia ha reiterado e innumerables veces

que los requisitos para garantizar la modalidad procesal del debido proceso de ley son los siguientes: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) *derecho a contrainterrogar testigos y examinar evidencia presentada en su contra*; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord". *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 889 (1993). Véase, además, *Katiria's Café v. Mun. de San Juan,* supra; *PVH Motor v. ASG,* 209 DPR 122, 131 (2022*); Román Ortiz v. OGP,* 203 DPR 947, 954 (2020); *Fuentes Bonilla v. ELA et al.,* supra, pág. 394; *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010); *Calderón Otero v. C.F.S.E.,* 181 DPR 386, 399 (2011).

### D. Peso de la prueba en el Recurso de Revisión

Sabido es que el sistema de multas por infracciones a las leyes de tránsito, por mucho tiempo, fue de naturaleza penal. La derogada Ley de Automóviles y Tránsito, Ley Núm. 279 de 5 de abril de 1946, en adelante, Ley Núm. 279-1946, la expedición y adjudicación de multas de tránsito se hacían a la luz del proceso penal. Posteriormente, la Ley Núm. 93 de 29 de junio de 1954, en adelante, Ley Núm. 93-1954, 9 LPRA ant. seccs. 221-227, enmendó la Ley Núm. 279-1946, a los fines de establecer un sistema de citación-denuncia simultánea, para las personas que violaran las leyes o reglamentos de tránsito. *Martínez v. Tribunal Superior,* 81 DPR 945 (1960).

Acorde con el sistema mencionado, cuando un oficial del orden público administraba una multa de tránsito, citaba simultáneamente a la persona a comparecer al Tribunal. Allí, el infractor podía hacer alegación de culpabilidad, disponiéndose así en forma rápida del caso y un pronunciamiento de sentencia. Sin embargo, cuando la persona no comparecía para hacer alegación, o alegaba ser inocente*, se presentaba una denuncia criminal bajo el*

*proceso ordinario.* Con relación a esto último, en su interpretación de la Ley Núm. 93-1954, *supra,* el Tribunal Supremo de Puerto Rico razonó que en estos supuestos, no se "permite la celebración de un juicio en los méritos a base del boleto ('ticket')". *Martínez v. Tribunal Superior*, supra, pág. 954.

Ahora bien, con la aprobación de la también derogada Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, en adelante, Ley Núm. 141-1960, 9 LPRA ant. sec. 301 *et seq.*, se aprobó un nuevo cuerpo normativo que buscaba atemperar el derecho de tránsito a los cambios industriales y económicos. Informe de la Comisión de lo Jurídico y la Comisión de Orden Público de la Cámara de Representantes de Puerto Rico sobre la P. de la S. 304, pág. 46.

Relevante al caso de autos, es importante destacar que la Ley Núm. 141-1960 adoptó el sistema de *denuncia-citación simultánea,* con algunos cambios, de la Ley Núm. 93-1954. Bajo este estatuto, el sistema de *citación-denuncia simultánea* no requería que el oficial querellante juramentara la denuncia. La Sección 9-101 de la Ley Núm. 141-1960, supra, ant. sec. 1491, dispuso que "para todos los fines legales el policía, al así actuar, se considerará como un funcionario judicial".

Por otro lado, aunque el sistema era virtualmente el mismo, la Sec. 9-103(b) de la Ley Núm. 141-1960, *supra,* determinó que se requeriría la formulación de una denuncia ordinaria únicamente para ciertos delitos menos graves al amparo de este estatuto, y cuando el conductor denunciado alegara que el boleto no le informaba de manera adecuada sobre la infracción que se le imputaba o que los hechos denunciados no constituían delito. En estos casos, se señalaba, entonces, fecha para juicio. "En todos los demás casos se continuarán los procedimientos a base del formulario originalmente radicado." *Íd.*

Es decir, no podía celebrarse un juicio por una infracción de tránsito apoyado únicamente en el boleto expedido. *Martínez v. Tribunal Superior,* supra. Esto, ya que cuando un conductor denunciado no comparecía a su citación o hacía alegación de inocencia, el mismo quedaba sujeto a responder por un delito, dentro de los sesenta (60) días que el Ministerio Público tenía para radicar en su contra. *Íd.* Sin embargo, cuando se proponía hacer declaración de culpabilidad, el Tribunal podía atender la infracción a base del boleto únicamente.

No empece a este arreglo, la congestión en los Tribunales no cedió. Por ello, nuestra Asamblea Legislativa promulgó la Ley Núm. 176 de 23 de julio de 1974, en adelante, Ley Núm. 176-1974, la cual enmendó el proceso de denuncia-citación simultánea de la Ley Núm. 141-1960. En su Exposición de Motivos, el Legislador explicó que la aplicación de la Ley Núm. 141-1960, supra, "***contribuye a la congestión de casos de tránsito*** a ser adjudicados por nuestros tribunales, lo que resta tiempo a éstos para ventilar y adjudicar con rapidez ***otros tipos de delitos***". (Énfasis nuestro). Además, razonó que, en su gran mayoría, la comparecencia de los conductores denunciados iba dirigida a declararse culpables. *Íd.* Por ello, entendió necesario "un reexamen de la efectividad de los mecanismos existentes para determinar si los propósitos públicos que inspiraron esta legislación se cumplen o no […]". *Íd.* Las enmiendas introducidas a través de la Ley Núm. 176-1974, *supra*, establecieron "como alternativa al proceso vigente" la reclasificación de algunos delitos en el estatuto en cuestión y estableció un proceso administrativo para que la ciudadanía realizara los pagos correspondientes a las infracciones de tránsito. Exposición de Motivos, Ley Núm. 176-1974.

Añadía que "[e]l procedimiento vigente requiere, además, la comparecencia de un gran número de conductores denunciados

ante los tribunales, en su mayoría, con el solo propósito de hacer una declaración de culpabilidad". *Id.* Según las estadísticas ante la Asamblea Legislativa, el setenta y ocho punto uno por ciento (78.1%) de los conductores se declaraba culpable sin cuestionar en juicio los hechos imputados por el policía. Esto significaba que en el casi ochenta por ciento (80%) de los boletos expedidos bajo el sistema de "denuncia–citación simultánea", la comparecencia de los policías denunciantes era realmente inútil e innecesaria.

Lo cierto es que estos cambios se realizaron para que la mayoría de los conductores denunciados pudieran pagar las multas mediante un procedimiento administrativo sencillo, sin tener que ir a los tribunales a perder su tiempo y el de policías, abogados, fiscales y jueces. No tuvo el propósito de menoscabar ninguno de los derechos reconocidos con anterioridad al infractor que interesaba defenderse en juicio de los hechos imputados por el policía en el boleto.

Consciente que una parte de la ciudadanía interesaba disputar los boletos de tránsito, el Artículo 16 de la Ley Núm. 176-1974, *supra*, añadió un Capítulo a la Ley Núm. 141-1960, supra, en el que recogió el proceso que denominó "revisión judicial". Luego de unas enmiendas posteriores, el mismo rezaba de la siguiente forma:

> Si el dueño del vehículo, el conductor, el traficante o el pasajero afectado por la notificación de multa administrativa considera que no se ha cometido la violación que se le imputa, podrá solicitar un recurso de revisión judicial ante la Sala del Tribunal de Distrito correspondiente al lugar donde se le expidió la notificación de falta administrativa de tránsito, dentro del término de treinta (30) días a partir de la fecha del recibo de la notificación.
>
> El recurso de revisión se formalizará presentando una solicitud en la Secretaría del Tribunal, en la cual se expondrán los fundamentos en que se apoya la

impugnación de la falta administrativa de tránsito. Radicado el recurso el peticionario deberá notificar el mismo al Secretario dentro de un término de cinco (5) días a contar desde su radicación.

[...]

Establecido el recurso de revisión será deber del Secretario elevar al Tribunal copia certificada de los documentos que obren en el expediente, dentro de un término de diez (10) días a contar de la fecha en que fuera notificado de la radicación del recurso de revisión. Recibidos los documentos, el Tribunal señalará la vista del recurso para tener lugar en un término no mayor de ciento veinte (120) días a contar de la fecha del recibo de dichos documentos. ***El Tribunal revisará en sus méritos las cuestiones de hecho y de derecho que dieron lugar a la imposición y notificación de la falta administrativa de tránsito.*** El Tribunal dictará su resolución en el caso dentro de un término de cinco (5) días a contar desde la fecha en que se celebre la vista, y la resolución dictada tendrá carácter de final y definitiva. El Tribunal notificará su resolución al Secretario y al peticionario dentro del término de los diez (10) días siguientes de haberse dictado la misma.

Sección 16-103 (f) de la Ley Núm. 141-1960, *supra*, ant. sec. 1873(f).
(Énfasis suplido).

Esto significaba que las "cuestiones de hechos y de derecho no se hacían a base del expediente que el Secretario de DTOP elevaba al Tribunal sino a base del juicio en sus méritos celebrado en el Tribunal, luego de escuchar la prueba de cargo, que dio lugar a la *"imposición y notificación de la Falta Administrativa de Tránsito"*. No existía duda que el peso de la prueba correspondía al Estado, el cual se descargaba con presentar el testimonio del policía. No albergamos duda que este proceso sustituyó al proceso penal que, previo a las enmiendas de la Ley Núm. 176-1974, *supra*, se tramitaba contra los infractores de la Ley Núm. 141-1960, *supra*, mediante el sistema de "denuncia–citación

simultánea". Por eso era imprescindible la comparecencia del policía a la vista en su fondo del recurso de "revisión judicial".

La vista en su fondo conservó las mismas características del proceso penal anterior. Al llamarse el caso para juicio, se juramentaba al policía denunciante y éste procedía con su testimonio, generalmente a base del interrogatorio que conducía el fiscal de la sala. El conductor podía contrainterrogarlo, además de declarar en su defensa. A base de la prueba desfilada el tribunal emitía su dictamen.

Si bien es cierto que el boleto era el modo de notificarle al conductor denunciado la conducta imputada, el mismo no constituía prueba —ni siquiera *prima facie*— de los hechos allí alegados. Es por esto que, cuando el policía no comparecía a la vista, el tribunal procedía a declarar "Con Lugar" el recurso de revisión judicial. Esto era equivalente al archivo y sobreseimiento del boleto o denuncia que acontecía en el procedimiento penal anterior a las enmiendas de la Ley Núm. 176-1974.

Éste era la experiencia acumulada y el procedimiento utilizado por jueces, fiscales y abogados del país respecto a la tramitación de la revisión judicial de boletos por falta administrativa de tránsito cuando entró en vigor la actual Ley Núm. 22-2000, *supra*. En su redacción original, Artículo 24.05(k) de la Ley Num. 22-2000, *supra*, sec. dispuso que el Recurso de Revisión Judicial podría ser solicitado "según se haya dispuesto mediante reglamento". Sin embargo, no existía reglamento alguno. *Hernández v. Secretario*, 164 DPR 390, 399 (2005). Por ello, la Ley Número 132 de 3 de junio de 2004 enmendó esta sección para aclarar que la solicitud del recurso de revisión judicial se haría "según los procedimientos correspondientes". Aunque en el ejercicio práctico del recurso de revisión judicial se llevaban a cabo los procesos de conformidad a lo establecido en la Ley Núm. 141-

1960, *supra,* los términos para la radicación, notificación, citación y adjudicación que esta contemplaba fueron eliminados.

Posteriormente, mediante la Ley Núm. 192 de 7 de agosto de 2008, en adelante, Ley Núm. 192-2008, se restituyó el proceso consagrado en la derogada Ley Núm. 141-1960, *supra,* mediante las enmiendas de la Ley Núm. 176-1976, para el recurso de revisión judicial. Así, la actual Ley Núm. 22-2000, *supra,* establece formalmente el actual procedimiento administrativo para la celebración de los recursos de revisión judicial en el Tribunal, sobre infracciones de tránsito. El proceso vigente mantiene el principio rector que el Magistrado revisará "en sus méritos las cuestiones de hecho y de derecho que dieron lugar a la imposición y notificación de la falta administrativa de tránsito". Artículo 23.05(l) de la Ley Núm. 22-2000, *supra,* sec. 5685(l).

### III.

El presente caso nos ofrece una oportunidad de evaluar la naturaleza de un recurso judicial que, aunque *de jure* es considerado de provisión civil, contiene serios e importantes matices penales. Hablamos, por supuesto, del Recurso de Revisión Judicial consagrado en la Ley 22-2000, *supra.* Piñeiro Colón recurre ante este Foro solicitando que revoquemos la determinación del TPI-Mayagüez que denegó su recurso de revisión judicial. Aduce que el Foro Primario abusó de su discreción y violentó el debido proceso de ley al así hacerlo. Entendemos que *le asiste la razón.*

El peticionario fue multado por usar su teléfono móvil mientras conducía. Sin embargo, sostiene que el uso del mismo era relacionado al sistema de GPS. Por ello, solicitó un recurso de revisión judicial. Según la transcripción oral de los procesos, el policía que expidió el boleto *no acudió a la vista.* Llamado el caso del peticionario, sin la comparecencia del agente, Piñeiro Colón le

explicó al TPI-Mayagüez que la razón por la que estaba utilizando su teléfono al momento de ser detenido era para mirar el GPS. Esto último fue explicado, detalladamente por el peticionario, en tres (3) ocasiones.[6]

Aun así, el 21 de noviembre de 2025, el Foro Recurrido emitió una *"Resolución sobre Recurso de Revisión de Multa Administrativa"* que declaró *"No Ha Lugar"* la petición de Piñeiro Colón para revocar la multa de cien dólares ($100.00) por el uso de celular, en contravención al Artículo 10.25 de la Ley Núm., 22-2000, *supra,* sec. 5305. Luego de evaluar el expediente, la transcripción de la prueba oral, los alegatos de las partes y un concienzudo análisis de la trayectoria histórica del recurso de revisión judicial y las particularidades de este proceso, este Tribunal entiende que la incomparecencia del policía debió resultar en la eliminación de la multa impugnada.

El Procurador General, en representación del DTOP, plantea en su escrito que, por ser este proceso uno de naturaleza civil, el peso de la prueba recae sobre el promovente, es decir, quien solicita el recurso de revisión judicial. Además, trae a nuestra atención que, a la luz de la Regla 304 (14) de las Reglas de Evidencia, 32 LPRA Ap. VI, existe una presunción que "los deberes de un cargo han sido cumplidos con regularidad", por lo que un Magistrado puede descansar en lo que exprese un boleto de tránsito. Su contención es que la multa expedida por un policía goza de una presunción de corrección, por lo que la ausencia del agente no requiere que el recurso sea concedido. Diferimos de esa posición.

Aunque en estricto derecho el recurso de revisión judicial pertenece en los contornos del derecho civil, el mismo contiene una amalgama de elementos penales que activan las protecciones en

---

[6] Transcripción de la prueba oral, págs. 6-7.

virtud del debido proceso de ley. Es decir, el sistema para revisar judicialmente las infracciones de tránsito que hoy prevalece es uno *sui géneris*, y su singularidad requiere que nuestra evaluación del mismo no se convierta en una camisa de fuerza que responda únicamente a provisiones civiles o criminales.

Reconocemos que, aunque la Ley Núm. 22-2000, *supra*, es un estatuto penal, la mayoría de las infracciones dispuestas en ella —incluida aquella objeto del caso de autos— no configuran delitos. Sin embargo, es necesario que recordemos que el proceso del recurso de revisión judicial tuvo su génesis cuando las infracciones de tránsito sí eran delitos. De hecho, según perfilamos en el epíteto anterior, cuando se eliminó el carácter criminal de las infracciones de tránsito, el sistema de revisión judicial se creó para aquellos conductores que quisieran impugnar en sus méritos los boletos ante un juez imparcial y con las salvaguardas del proceso penal. Lo cierto es que el propósito de la Ley Núm. 176-1974, *supra*, fue facilitar el trámite para que las personas que no quisieran objetar su multa pudieran así hacerlo de manera expedita, descongestionando así los Tribunales de casos no contenciosos. Es decir, su fin fue evolucionar a un sistema más eficiente para adjudicar y tramitar las multas de tránsito, no eliminar las protecciones circunscritas a los procesos señalados para impugnar las mismas en sus méritos. Así, la precitada Ley ideó el recurso de revisión judicial.

Aun con los cambios que naturalmente ocurren en un sistema legal vivo, el actual recurso de revisión persigue el mismo fin que persiguió cuando advino a la vida jurídica – proveerle un remedio al ciudadano que desee declarar su inocencia ante las imputaciones del Estado en un boleto de tránsito. En fin, concluimos que este tipo de recurso es parte de la progenie del sistema cuasi-penal que estableció Ley Núm. 176-1974, *supra*, y

reinsertamos en la vigente Ley Núm. 22-2000, supra, mediante las enmiendas de la Ley Núm. 192-2008, *supra.*

Por otro lado, si bien es nuestra contención es que el recurso de revisión judicial conserva hoy día sus matices penales, por lo que el peso de la prueba recae sobre el Estado, justipreciamos que, de igual forma, hay un derecho propietario de por medio que activa el debido proceso de ley en su vertiente procesal. Esto, ya que una infracción de tránsito como la del caso de autos, resulta en una multa pecuniaria.

Según reseñáramos previamente, la interferencia del Estado con algún interés propietario activa una serie de salvaguardas procesales que deben ser garantizadas en los procesos adjudicativos. Concluimos que, en los recursos de revisión judicial el Estado viene obligado a asegurarlas de igual manera. La primera de estas responde a la notificación adecuada. El boleto de tránsito satisface este requisito, pues en el mismo se le indica al ciudadano qué se le imputa y por qué. El segundo es que el proceso sea dirimido ante un juez imparcial, y el tercero es que se le dé al individuo la oportunidad de ser oído. Estos, también, quedan satisfechos en el proceso del recurso de revisión judicial, pues se realizan ante un juez que viene obligado a escuchar a ambas partes. El próximo de estos derechos es el de estar representado por abogado, lo cual puede hacer el promovente de este tipo de recursos. Por último, el debido proceso de ley requiere *que la persona pueda contrainterrogar testigos de cargo y que la decisión se base en el expediente o récord.*

Esta Curia infiere que la apreciación del recurrido, y la postura inflexible que define el recurso de revisión judicial como un proceso impoluto de naturaleza civil, obvia estos dos (2) requisitos. En el caso de autos, el peticionario no pudo contrainterrogar al agente que expidió el boleto en su contra.

Además, surge que la prohibición del teléfono móvil mientras se conduce, consagrada en la Ley Núm. 22-2000, *supra*, contiene una serie de excepciones. Entre estas, se encuentra *el uso del mismo para servirse del GPS*. El peticionario levantó esto como defensa, sin ser confrontado con prueba en contrario por el Estado. Y, reiteramos, es nuestra apreciación que el boleto de tránsito no es, ni puede ser en un proceso cuasi-penal, prueba *prima facie* de su contenido.

Finalmente, no podemos concluir que la determinación del TPI-Mayagüez haya sido el resultado de la apreciación de la prueba, según requiere la Regla 305 de Evidencia, *supra*, el debido proceso de ley en su vertiente procesal y la Ley Núm. 22-2000, supra. Esta última, como vimos, instruye al Foro Primario que evalúe ***"en sus méritos las cuestiones de hecho y de derecho que dieron lugar a la imposición y notificación de la falta administrativa de tránsito".*** Artículo 23.05(l) de la Ley Núm. 22-2000, *supra*, sec. 5685(l). Para lograr esto último, es un requisito indispensable que el Estado, representado por el policía que expide el boleto, comparezca. De lo contrario, procede conceder el recurso de revisión judicial.

### IV.

Por los fundamentos previamente esbozados, *revocamos en parte el dictamen recurrido,* a los efectos de declarar el recurso de revisión judicial solicitado por el peticionario *"Con Lugar"* en su totalidad.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones