ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| PARQUE ESCORIAL RESIDENTIAL OWNER ASSOCIATION, INC. **Parte recurrida** v. JORGE RODRIGUEZ AGOSTINI Y OTROS **Parte peticionaria** | **TA2026CE00427** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina Caso núm.: **CA2025CV02248** Sobre: Cobro de Dinero Ordinario |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de abril de 2026.

Comparecen ante nos mediante auto de *certiorari* los peticionarios Jorge Rodríguez Agostini, Jo-Ann Steinhardt Hernández y la Sociedad Legal de Gananciales compuesta por ambos, representados por Steinhardt Hernández, quien es abogada de profesión. En su recurso, solicitan que revisemos y revoquemos la *"Resolución"* emitida por la Juez Coordinadora de Asuntos de los Civil en el Tribunal de Primera Instancia, Sala Superior de Carolina, en adelante, TPI-Carolina, el 10 de marzo de 2026. En la misma, el Foro *a quo* declaró *"No Ha Lugar"* la solicitud de inhibición contra el Juez Honorable Ignacio Morales Gómez, incoada por los peticionarios.

Por los fundamentos que expondremos a continuación, *denegamos* expedir el recurso.

## I.

Los hechos que dieron lugar a la controversia que aquí nos ocupa, se ubican el 9 de julio de 2025, cuando Parque Escorial

Residential Owners Association, Inc., en adelante, Parque Escorial o recurrido, presentó una *"Demanda"* en concepto de cobro de dinero contra los peticionarios.[1] Ahora bien, en la Vista de Regla 60 celebrada por el TPI-Carolina el 7 de agosto de 2025, con relación a este caso, el Foro Primario ordenó la conversión del asunto a los procesos ordinarios.

El 13 de agosto de 2025 se notificó la *"Minuta"* sobre la mencionada vista.[2] De esta surge que Steinhardt Hernández le presentó un asunto jurisdiccional al Foro Recurrido, a lo que este respondió concediéndole un corto término, a vencerse ese mismo día, a la parte recurrida para subsanar las deficiencias en la citación. Sin embargo, determinó que Parque Escorial satisfizo los requisitos de notificación, por lo que sí tenía jurisdicción sobre los peticionarios. Dispuso, además, que los otros asuntos planteados por los peticionarios podían ser atendidos en una vista sobre ello.

Posterior a esto, el TPI-Carolina concedió un receso para que las partes dialogaran, para auscultar la posibilidad de llegar a un acuerdo. Al reanudarse los procesos, Steinhardt Hernández y la representación legal de la parte recurrida tienen un breve careo, y los peticionarios solicitaron que se desestime los asuntos en su contra por falta de parte indispensable, ya que ellos no son titulares de la propiedad objeto de la demanda. La referida minuta recoge que el Foro Primario estaba "convencido de que los demandados no tienen el conocimiento mínimo, jurídico, necesario, para auto representarse en este caso", por lo que les concedió veinte (20) días para contratar a un abogado.

El 27 de agosto de 2025, los peticionarios presentaron una *"Moción en Cumplimiento de Orden"* en la que informaron que Steinhardt Hernández es abogada, debidamente admitida al

---

[1] SUMAC, Entrada Núm. 1.
[2] SUMAC, Entrada Núm. 5.

ejercicio de la profesión, por lo que interesaba representar a los peticionarios por derecho propio.[3] Al día siguiente, el TPI-Caroline autorizó la auto representación de los peticionarios y les concedió un término para hacer alegación responsiva.[4]

Luego de varios asuntos procesales relevantes a la controversia en cobro de dinero entre las partes, no es hasta el *3 de febrero de 2026,* que los peticionarios radicaron *"Moción Solicitando Recusación Judicial al Amparo de la Regla 63.1 de Procedimiento Civil".*[5] En la misma, Steinhardt Hernández alegó que el 1 de febrero de 2026, mientras se preparaba para una vista argumentativa ante el Foro Primario, se detuvo a inspeccionar la *"Minuta"* sobre los procesos ante el foro *a quo* el 7 de agosto de 2025. En la misma aduce que de la propia minuta se recoge que el Juez Ignacio Morales Gómez incurrió en un diálogo ex parte con la representación legal de Parque Escorial, previo a que estos se conectaran a la videoconferencia. Además, sostuvo que las expresiones del mencionado magistrado sobre la capacidad de los peticionarios para representarse denotan prejuicio.

El TPI-Carolina concedió a la parte recurrida hasta el 23 de febrero de 2026 para replicar a la moción de recusación.[6] Llegada la fecha provista, Parque Escorial solicitó una prórroga, por no contar con la regrabación de la vista del 7 de agosto de 2025.[7] Aunque el TPI-Carolina concedió la misma,[8] el 4 de marzo de 2026 emitió una *"Resolución"* en la que declaró *"No Ha Lugar"* la petición de recusación.[9] Por todo lo cual, y en cumplimiento de las reglas estatutarias al respecto, el Juez Ignacio Morales Gómez refirió el asunto a la Juez Administradora del TPI-Carolina.

---

[3] SUMAC, Entrada Núm. 6.
[4] SUMAC, Entrada Núm. 9.
[5] SUMAC, Entrada Núm. 54.
[6] SUMAC, Entrada Núm. 58.
[7] SUMAC, Entrada Núm. 75.
[8] SUMAC, Entrada Núm. 76.
[9] SUMAC, Entrada Núm. 77.

El 6 de marzo de 2026 el asunto fue referido a la Juez Coordinadora en Asuntos de lo Civil.[10] El 10 de marzo de 2026 se notificó la *"Resolución"* de esta última declarando *"No Ha Lugar"* la solicitud de recusación de los peticionarios.

Inconforme, los peticionarios recurrieron ante nos mediante *"Petición de Certiorari"* el 8 de abril de 2026. En su escrito, hicieron los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la solicitud de recusación pese a que las expresiones del juez recurrido, evaluadas bajo un estándar objetivo, razonablemente arrojan dudas sobre su imparcialidad.
>
> **SEGUNDO ERROR:** Erró el Tribunal de Instancia al reducir el análisis de recusación exclusivamente a la existencia de un prejuicio personal, sin adjudicar adecuadamente la doctrina de apariencia de parcialidad y su efecto sobre la confianza pública en el sistema judicial.
>
> **TERCER ERROR:** Erró el Tribunal de Primera Instancia al concluir que la solicitud era fatalmente tardía sin evaluar si el perjuicio ocasionado por la continuación del caso ante el mismo juez produce un menoscabo actual y continuo del debido proceso y de la apariencia de justicia.
>
> **CUARTO ERROR:** Erró el Tribunal de Primera Instancia al convalidar como mera evaluación bajo la Regla 9.4 unas expresiones judiciales que excedieron una determinación técnica sobre autorrepresentación y asumieron el carácter de una descalificación personal de la parte.

El 10 de abril de 2026 emitimos una *"Resolución"* concediéndole a la parte recurrida hasta el 20 de abril de 2026 para presentar su posición en cuanto al recurso, según dispone la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56-57, 215 DPR ___ (2025). En cumplimiento de orden, la parte recurrida presentó oportunamente su *"Oposición a Petición de Certiorari"*. Perfeccionado el recurso de epígrafe, procedemos a expresarnos.

---

[10] SUMAC, Entrada Núm. 78.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Allio v. Santiago Chardón*, 2026 TSPR 13, 217 DPR \_\_\_ (2026); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, supra, pág. 63; *Allio v. Santiago Chardón*, supra; *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio

sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

### B. Recusación o Inhibición

El estado de Derecho se asienta sobre el recto y sabio ejercicio de las funciones judiciales. Por su parte, el Juez ejerce en nuestra sociedad una distinguida función de equilibrio en los conflictos humanos. La singularidad en esta función configura la imparcialidad del juzgador como exigencia del debido proceso de ley. *Hernández v. Secretario*, 164 DPR 390, 396 (2005).

El ordenamiento legal ha provisto varios mecanismos que le garantizan al ciudadano que en la adjudicación de su causa el juzgador será un ente imparcial. Y es que así debe ser, pues los tribunales constituyen el último asidero de la fe de nuestro pueblo en la Justicia. "La fe de la ciudadanía en el sistema de justicia que impera en nuestro País resulta ser imprescindible para su bienestar general. Esa fe se preserva únicamente en la medida en que los ciudadanos confíen en la integridad, honestidad e imparcialidad de quienes tienen la noble encomienda de impartir justicia." *Lind v. Cruz*, 160 DPR 485, 488 (2003). Véase, además, *Martí Soler v. Gallardo Álvarez*, 170 DPR 1, 8 (2007).

Las normas de inhibición tienen el potencial de evitar el prejuicio, parcialidad, arbitrariedad en la adjudicación de las controversias y a establecer garantías de justicia para las partes. *Ramírez de Ferrer v. Mari Brás*, 142 DPR 941, 953 (1997). En cuanto a lo que significa prejuicio o parcialidad personal, nuestro Tribunal Supremo ha dicho que ello se refiere a "una actitud que se origina fuera del plano judicial, es decir, en el plano

extrajudicial." *Mun. de Carolina v. CH Properties*, 200 DPR 701, 712 (2018).

La inhibición y recusación de un juez o jueza está regulada por los Cánones de Ética Judicial, 4 LPRA Ap. IV-B y las Reglas 63.1 y 63.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 63.1 y 63.2.

Por su parte, el Canon 20 de los Cánones de Ética Judicial ordena a los jueces inhibirse en caso de perjuicio o parcialidad que les impida presidir un procedimiento judicial de manera más justa, objetiva e imparcial. El precitado canon reza de la siguiente manera:

> Las juezas y los jueces entenderán y adjudicarán los asuntos que se les asignen, salvo aquellos en los que la ley requiera su inhibición y en cualesquiera de los casos siguientes, pero sin limitarse a éstos:
>
> (a) por tener prejuicio o parcialidad hacia cualquiera de las personas, las abogadas o los abogados que intervengan en el pleito o por haber prejuzgado el caso;
>
> (b) por tener interés personal o económico en el resultado del caso;
>
> (c) por haber sido abogada o abogado, asesora o asesor de cualquiera de las partes o de sus abogadas o abogados en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración;
>
> (d) por haber presidido el juicio del mismo caso en un tribunal inferior o por haber actuado como magistrada o magistrado para expedir la orden de arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal;
>
> (e) por existir parentesco de consanguinidad o afinidad dentro del cuarto grado con la persona acusada, con la víctima del delito, con la abogada defensora o el abogado defensor, con la o el fiscal, o con un miembro del Jurado en un procedimiento criminal, o con cualesquiera de las partes o sus representantes legales en un procedimiento civil;
>
> (f) por intervenir en el procedimiento una persona natural o jurídica que le haya facilitado o gestionado algún préstamo

en el que no se hayan dispensado las garantías o condiciones usuales;

(g) cuando, en calidad de funcionaria o funcionario que desempeña un empleo público, haya participado como abogada o abogado, asesora o asesor, o testigo esencial del caso en controversia;

(h) cuando una de las abogadas o los abogados de las partes sea abogada o abogado de las juezas o de los jueces que han de resolver la controversia ante su consideración, o lo haya sido durante los últimos tres años, o

(i) por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia. Las juezas y los jueces deberán inhibirse tan pronto conozcan de la causa de inhibición mediante una resolución escrita en la que harán constar dicha causa, con su notificación a todas las partes.

A tenor con lo provisto, la Regla 63.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 63.1, dispone lo siguiente:

A iniciativa propia, *o a recusación de parte*, un juez o jueza deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes:

a. Por tener prejuicio o parcialidad hacia cualquiera de las personas o los abogados o abogadas que intervengan en el pleito o por haber prejuzgado el caso;
b. por tener interés personal o económico en el resultado del caso;
c. por existir un parentesco de consanguinidad o afinidad dentro del cuarto grado con el(la) fiscal, procurador(a) de asuntos de familia, defensor(a) judicial, procurador(a) de menores o con cualquiera de las partes o sus representantes legales en un procedimiento civil;
d. por existir una relación de amistad de tal naturaleza entre el juez o jueza y cualquiera de las partes, sus abogados o abogadas, testigos u otra persona involucrada en el pleito que pueda frustrar los fines de la justicia;
e. por haber sido abogado(a) o asesor(a) de cualquiera de las partes o de sus abogados(as) en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración;
f. por haber presidido el juicio del mismo caso en un tribunal inferior o por haber actuado como magistrado(a) a los fines de expedir una orden de

arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal;

g. por intervenir en el procedimiento una persona natural o jurídica que le haya facilitado o gestionado algún préstamo en el que no se hayan dispensado las garantías o condiciones usuales;

h. cuando en calidad de funcionario(a) que desempeña un empleo público, haya participado como abogado(a), asesor(a) o testigo esencial del caso en controversia;

i. cuando uno de los abogados o abogadas de las partes sea abogado(a) de los jueces o juezas que han de resolver la controversia ante su consideración o lo haya sido durante los últimos tres años, o

j. por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

Por su parte, la Regla 63.2 de Procedimiento Civil, 32 LPRA Ap. V. R. 63.2, "pauta el contenido de una moción de inhibición." *Martí Soler v. Gallardo Álvarez*, supra, pág. 8. Es decir, dispone en cuanto al perfeccionamiento de la solicitud de inhibición o recusación y su procedimiento. *Mun. de Carolina v. CH Properties*, supra, pág. 709.

Según la *Regla 63,* la recusación de un juez o jueza no es una sanción disciplinaria, sino un mecanismo profiláctico procesal para garantizar la pureza de la tarea judicial. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 774 (2013). No obstante, cuando un juez o jueza actúa con pasión, prejuicio o parcialidad pudiera estar incurriendo también en una violación a sus deberes éticos.

En particular, el *Canon 20 de Ética Judicial* dispone que, los jueces deben abstenerse de adjudicar aquellos casos en los que tengan "prejuicio o parcialidad hacia cualquiera de las personas, las abogadas o los abogados que intervengan en el pleito o por haber prejuzgado el caso". *Íd.*; Canon XX de Ética Judicial, 4 LPRA IV-B. De igual forma, el mencionado canon establece que, los jueces deberían inhibirse "[p]or cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para

adjudicar o que tienda a minar la confianza pública en el sistema de justicia". *Mun. de Carolina v. CH Properties*, supra, pág. 712.

Por último, sabido es que "la imputación de parcialidad o prejuicio, como punta de lanza para obtener la inhibición o recusación de un juez, ***debe cimentarse en cuestiones personales serias, no triviales ni judiciales; es decir, una actitud originada extrajudicialmente en situaciones que revistan sustancialidad"***. (*Énfasis suplido*). *Ruiz v. Pepsico P.R., Inc.*, 148 DPR 586, 588 (1999). Véase, además, *Mun. de Carolina v. CH Properties*, supra, pág. 712. Es por lo que, para determinar la existencia de prejuicio personal por parte del juez, será necesario analizar la totalidad de las circunstancias a la luz de la prueba presentada, desde la perspectiva de la mítica figura del buen padre de familia. *Ruiz v. Pepsico P.R., Inc.*, supra, pág. 589; *Mun. de Carolina v. CH Properties*, supra, pág. 712.

### III.

Los peticionarios recurren ante nos solicitando, en síntesis, que ordenemos la recusación del Juez Ignacio Morales Gómez. Sostiene que las expresiones recogidas en la *"Minuta"* del 7 de agosto de 2025 denotan parcialidad y prejuicio en contra de Steinhardt Hernández. Sin embargo, luego de un examen sosegado del expediente ante nos, y conforme a la norma que nos obliga a determinar nuestra facultad de evaluar el recurso de epígrafe, nos vemos impedidos de expedir el recurso. Lo cierto es que no hemos apreciado prejuicio, error o parcialidad en la determinación del Foro Recurrido. Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, supra y los criterios evaluativos de la Regla 40 de nuestro Reglamento, *supra*, estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia.

Ahora bien, por último, esta Curia no puede dejar pasar por alto lo siguiente. Conviene recordar lo dispuesto en la Regla 8.2 de las recientes reglas que ahora rigen la conducta en el ejercicio de la profesión de la abogacía, *In Re Reglas de Conducta Profesional de Puerto Rico*, Resolución ER-2025-02, del 17 de junio de 2025. La misma reza de la siguiente manera:

> (a) Una persona que ejerce la abogacía ***no podrá hacer manifestaciones públicas concernientes a las cualificaciones o a la integridad de un juez o una jueza***, oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o funcionaria del Ministerio Público, si sabe que sus manifestaciones son falsas o las hace ***con grave menosprecio de la verdad***.
>
> (b) Aunque las manifestaciones públicas de una persona que ejerce la abogacía se expresen de conformidad con lo establecido en el inciso (a), toda persona que ejerce la abogacía ***tiene la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra un juez o una jueza,*** oficial adjudicativo o un funcionario o una funcionaria del Ministerio Público, cualquier recurso humano que labore en el Poder Judicial como por ejemplo, personal de Secretaría o del alguacilazgo, o sobre una persona nominada como juez o jueza o funcionario o persona funcionaria del Ministerio Público o cualquier otro funcionario o funcionaria judicial.
>
> (Énfasis nuestro).

Al evaluar la *"Minuta"* del 7 de agosto de 2025 y las actuaciones del magistrado objeto de la controversia posterior a la vista en cuestión, entendemos que las expresiones de la Lcda. Steinhardt Hernández en los escritos ante nos resultan innecesariamente coloridas y resultan desproporcionales a lo sucedido. Por eso, nos inclinamos a inferir que las mimas pudieran violentar la regla transcrita previamente. Lo cierto es que la

representación animosa de un abogado –especialmente cuando este tiene intereses personales en los asuntos– debe precaverse para no dar paso a expresiones temerarias o indicativas de un humor impávido ante los tribunales. El trabajo de un abogado debe ejecutarse de manera que "no resulte en una violación a las disposiciones que reglamentan la conducta del abogado para con los tribunales y que imponen, a los primeros, el deber de observar una conducta del mayor respeto a los tribunales". *In re Miranda Marchand*, 135 DPR 580, 588 (1994).

Finalmente, destacamos el reciente caso *In re García Pérez*, 211 DPR 638 (2023), en donde el Tribunal Supremo de Puerto Rico sancionó a un letrado por expresiones inapropiadas hacia varios jueces en sus escritos. "[A]un en su faena de defender los derechos de sus clientes cuando discrepan de alguna determinación judicial, los abogados y las abogadas 'no tienen una licencia absoluta en el uso del lenguaje'". *In Re Garcia Pérez*, supra, pág. 650, citando a *In re Ortiz Sánchez*, 201 DPR 765, 779 (2019). Nuestro Alto Foro ha dicho que no se justificará "el lenguaje oral o escrito que pon[ga] en entredicho la honestidad y ecuanimidad de [un] juez [...]". *In re Pérez Soto*, 200 DPR 189, 202 (2018). Por ello, se espera de "éstos y éstas dirigirse al tribunal de forma respetuosa y decorosa". *In Re Garcia Pérez*, supra, pág. 650.

**IV.**

Por los fundamentos que anteceden, *denegamos expedir el recurso solicitado.*

El juez Sánchez Ramos concurre sin opinión escrita.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones